**STATE of Missouri, ex rel., Glen REYNOLDS, Relator,**

v.

**Honorable Larry L. KENDRICK, Judge of the Circuit Court of St. Louis County, Div. 17, Respondent.**

No. 64607.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 28, 1993.

Richard Hereford, St. Louis, for relator.

Daniel Diemer, St. Louis, for respondent.

CARL R. GAERTNER, Presiding Judge.

Relator, Glen Reynolds, seeks our writ prohibiting respondent from proceeding with the relator's trial for assault in the first degree and armed criminal action. Relator alleges that such a trial would be in violation of his constitutional right against double jeopardy. We granted a preliminary writ of prohibition which we now make permanent.

This cause was originally assigned to the Honorable Richard T. Enright of the Circuit Court of St. Louis County. On April 14, 1993, a jury was sworn, and the State called its first witness, Carroll Harper. Harper testified to the following facts.

Harper said he worked as a part-time caretaker at a Laundromat. On February 21, 1992, the defendant, Glen Reynolds, entered the Laundromat. Harper asked the defendant to leave, but he refused. Harper then called the police and locked the door. At that point, the defendant went into the bathroom. Harper opened the bathroom door and told the defendant to come out. The defendant made a threatening gesture with a pair of needle-nose pliers, but Harper hit the defendant first with a lead pipe. With the blow to the head, the defendant fell to the floor. Harper backed up, and both men kept their distance. But when Harper looked out the front door to see if the police had arrived, the defendant stabbed him in the back of the head with the needle-nose pliers.

Upon cross-examination, Harper admitted his testimony at the defendant's preliminary hearing contradicted his trial testimony. During the preliminary hearing, he had testi-fied that the defendant stabbed him before he struck the defendant. To explain this inconsistency, Harper said a police officer who questioned him had implied that Harper should testify that the defendant stabbed him first. The following exchange took place:

Q So when you testified at the preliminary hearing under oath, that was not the truth?

A It wasn't the way it happened.

Q So you committed perjury on that date, didn't you?

At this point in the proceedings, the court called for a recess.

During this recess, the trial judge and counsel held a discussion off the record. When they came back on the record, the prosecutor asked the judge to recuse himself. The prosecutor based this request on an off-the-record statement by the judge that a directed verdict in favor of the defendant at the end of the State's case would be appropriate. The trial court questioned whether he could disqualify himself in the middle of a trial but stated that he did want to end the proceedings.

THE COURT: Well, I want to do this in such a way that the State can appeal my ruling. I want to get rid of the case, but I don't want to do it in such a way that the State can't appeal it; I want to be sure that they can appeal. And I guess if I sustain a motion to strike the complaining witness's testimony—

DEFENSE COUNSEL: Then he can put on whatever other evidence he has, and then we would make a motion for dismissal or acquittal at the close of the State's evidence.

THE COURT: Well, how can we wind it up right now, though? I'm in no shape to hear any more evidence in this case.

DEFENSE COUNSEL: I have no further suggestions.

At that point, the judge decided to declare a mistrial *sua sponte*. The assistant prosecuting attorney asked the judge to state the specific reasons for the mistrial, but the judge refused. The judge told the parties

that they could proceed in whatever manner they thought appropriate.

On June 19, 1993, the defendant filed a motion to dismiss for lack of jurisdiction. A hearing was held on defendant's motion, and the motion was overruled. The case was then assigned for trial to the Honorable Larry L. Kendrick of the Circuit Court of St. Louis County. This proceeding in prohibition ensued.

■ The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const.Amend. V. The Double Jeopardy Clause applies to state trials through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969). The defendant maintains that retrying this matter would violate his due process rights by twice placing him in jeopardy.

■ Whether double jeopardy bars retrial after the trial court has declared a mistrial depends largely on the defendant's position at the time the mistrial was declared. If the defendant requested or consented to the mistrial, then double jeopardy does not bar a second trial unless the prosecutor intentionally goaded the defendant into making the request. *Oregon v. Kennedy,* 456 U.S. 667, 675–76, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). On the other hand, where the defendant did not consent to the mistrial, double jeopardy does bar retrial unless the declaration of a mistrial was justified by "manifest necessity." *United States v. Jorn,* 400 U.S. 470, 481, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971); *State v. Tolliver,* 839 S.W.2d 296, 299 (Mo. banc 1992).

Neither party contends that the defendant requested or expressly consented to the mistrial. In fact, the mistrial was declared only after the State insisted that the trial judge remove himself from this matter because he had displayed a fixed prejudgment of the issues in the case. The State argues that the defendant implicitly consented to the mistrial by failing to make a specific objection. The State also maintains that the mistrial was justified by a "manifest necessity"—the trial judge's prejudgment of the issues before him.

## I. CONSENT

■ Relying on *State v. Tolliver,* 839 S.W.2d 296 (Mo. banc 1992), the State argues that the defendant consented to the mistrial by failing to make a specific objection. *See, Tolliver,* at 300. Implied consent to a mistrial is as effective as express consent in vitiating any double jeopardy bar to retrial. *Id.* at 299. However, determining consent does not turn on any mechanical formula, but on a careful analysis of the facts of each case. *Id.* at 299. The State contends that the instant case is factually similar to *Tolliver.* We disagree.

In both *Tolliver* and the present case, the trial court declared a mistrial on its own motion. However, in other respects, *Tolliver* and the present case could not be farther apart. In *Tolliver,* the trial court had granted the defendant's motion to prohibit a police detective from mentioning his assignment with the "sex crimes unit." *Tolliver,* at 297. The prosecutor failed to inform the detective of this, and the detective testified that he worked for the sex crimes unit. *Id.* Defense counsel objected and asked to approach the bench. At this sidebar, defense counsel began to argue about the impropriety of the prosecutor's conduct. *Id.* at 298. The trial court interrupted defense counsel to declare a mistrial. *Id.* Defense counsel asked "that it be with prejudice." *Id.* The trial court said, "No, I'll declare a mistrial." *Id.* There was no further objection from defense counsel, and the trial court excused the jury. Our Supreme Court held that in this situation the defendant had consented to the mistrial. *Id.* at 300.

The situation in the instant case is markedly different. After the victim of the alleged assault testified to facts tending to show that he was the aggressor in the altercation and after the victim admitted his contrary testimony at the preliminary hearing had been induced by a police officer, the trial court ordered a recess. Off the record, the trial judge apparently expressed an opinion that the defendant would be entitled to a directed verdict of acquittal. The prosecutor

then demanded the judge recuse himself, an action which would necessitate a mistrial. Defense counsel did not consent to such action but suggested that the prosecutor complete his case so that defendant could move for a directed verdict of acquittal.

In *Tolliver*, the court held that the silence of defense counsel when presented with an opportunity to object, could give rise to an inference of consent to the declaration of a mistrial. Moreover, this inference was strengthened in *Tolliver* because the mistrial was declared by the court after defense counsel's objection to improper evidence which was highly prejudicial to defendant. Thus, although his objection did not include an express request for a mistrial, defense counsel's silence when the trial judge indicated his intention to declare the mistrial could logically be interpreted as consent.

Just the opposite is true here. Defense counsel made no objection to the introduction of evidence. No evidence was prejudicial to defendant. Indeed, it was the prosecution's case which was in shambles and the prosecuting attorney who initiated the suggestion that the trial should be aborted by requesting the recusal of the trial judge. Defense counsel expressed his desire to continue the trial. Under these circumstances there can be no inference of consent to the mistrial.

## II. MANIFEST NECESSITY

When the trial court declares a mistrial on its own motion and the defendant does not consent, double jeopardy bars retrial unless the mistrial was justified by manifest necessity. *United States v. Jorn*, 400 U.S. at 485, 91 S.Ct. at 557. Here, the State argues the mistrial did result from manifest necessity. The State contends that the trial judge's fixed opinion about the outcome of the case necessitated a mistrial. Again, we disagree.

It is difficult to determine what particular circumstances constitute manifest necessity. The United States Supreme Court has expressly refused to formulate rules based on categories of circumstances which will permit or preclude retrial. *Jorn*, 400 U.S. at 480, 91 S.Ct. at 555. Instead, we

remain guided by the oft-quoted language of Justice Story's majority opinion in *United States v. Perez*, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824).

[Courts] are to exercise a sound discretion on the subject [of declaring a mistrial]; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power [to declare a mistrial] ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

*Perez*, 22 U.S. (9 Wheat) at 580.

In the instant case, because the trial court did not state its reasons for granting the mistrial, we can only speculate on what those reasons may have been. Apparently in a comment which is not preserved in the record, the trial judge displayed a willingness to grant defendant's motion for acquittal at the close of the State's evidence even though the State had not completed its case. The State points to this exchange as the basis necessitating a mistrial. But, a trial judge cannot avoid forming and giving expression to tentative opinions upon issues based on the evidence before him. *State v. Lovelady*, 691 S.W.2d 364, 367 (Mo.App.1985). Since the State's complaining witness admitted to perjuring himself at the defendant's preliminary hearing and since this witness's testimony was the State's primary evidence, the trial judge did not err by informing the State of his tentative opinion that a directed verdict was likely. In any event, this certainly did not necessitate the drastic recourse of declaring a mistrial without the defendant's consent.

Nothing in the record necessitated a mistrial and the defendant did not consent thereto. Therefore, double jeopardy bars retrial. The preliminary writ in prohibition is made absolute.

CRAHAN and SMITH, JJ., concur.