STATE of Missouri, Respondent,

v.

Theodore TIGER, Jr., Appellant.

No. WD 53920.

Missouri Court of Appeals, Western District.

April 21, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1998.

Application for Transfer Denied Aug. 25, 1998.

John W. Stapleton, Jr., Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

LAURA DENVIR STITH, Presiding Judge.

Appellant Theodore Tiger appeals his conviction for trafficking drugs in the second degree. He argues that his right not to be subjected to double jeopardy was violated when he was retried after his first trial ended in a mistrial. Because the record reveals that the mistrial was declared over Mr. Tiger's objection and that there was no manifest necessity for the mistrial, we agree that the State was barred from again trying him for the same offense. Therefore, the judgment of conviction is reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 9:00 p.m. on February 27, 1995, officers working for the Kansas City, Missouri Police Department executed a search warrant at a house located at 2536 Michigan in Jackson County, Missouri. Sergeant Mike Ponessa and Officer Michael Allen assisted in this operation. They were part of the team assigned to watch the back of the house, while another group of officers entered the house through the front door.

As Sergeant Ponessa and Officer Allen approached the back of the house, they heard breaking glass. Both officers shined their flashlights on one of the back windows, and they saw a man trying to climb out through it. Sergeant Ponessa ordered the man to step back from the window. As both officers continued to illuminate the man with their flashlights, they saw the man throw a clear plastic bag out the window. The bag, which contained a white, rocky substance, landed on the ground below the window. Sergeant Ponessa told Officer Allen to watch the plas-

tic bag while he went around to the front of the house.

Police officers found three men inside the house, one of whom was the defendant, Theodore Tiger. Sergeant Ponessa entered the house after it was secured and identified Mr. Tiger as the man he saw throw the bag out the window. Sergeant Mark Francisco went outside and recovered the bag containing the white, rocky substance that was being watched by Officer Allen. Sergeant Francisco wrote his initials on the bag. The substance inside was field tested and determined to be crack cocaine. Later testing by a chemist revealed that the bag contained 9.91 grams of crack cocaine. Officer Allen also went inside the house and identified Mr. Tiger as the man who threw the bag outside. The police arrested Mr. Tiger for possession of the cocaine. The State charged Mr. Tiger by information, as a prior and persistent offender, with one count of trafficking drugs in the second degree. The information alleged that Mr. Tiger possessed six grams or more of a mixture containing cocaine base.

Mr. Tiger's first trial ended in a mistrial for reasons which will be discussed in the remainder of this opinion. A second trial also ended in a mistrial. A third trial began on November 13, 1996. The jury found Mr. Tiger guilty of trafficking drugs in the second degree. On January 17, 1997, the judge sentenced Mr. Tiger as a prior and persistent offender to a term of twenty years in the Missouri Department of Corrections. This appeal followed.

## II. DOUBLE JEOPARDY

### A. Facts Concerning Declaration of Mistrial.

As his first point on appeal, Mr. Tiger claims that the trial court erred in denying his motion to dismiss. He argues that his Constitutional right to be free from double jeopardy was violated when he was retried after the court declared a mistrial *sua sponte* during his *first* trial.

The case first came to trial on June 17, 1996. On that day, Sergeant Ponessa testified regarding the events surrounding the execution of the search warrant and the arrest of Mr. Tiger. He testified that he saw Mr. Tiger throw a bag out the back window and that he had another officer watch the bag while he went around to the front of the house. After Sergeant Ponessa's testimony, the judge declared the court in recess for the day. She also told defense counsel to tell Sergeant Ponessa to "stick around" for the rest of the trial in case defense counsel wanted to recall him. However, later that evening, the sergeant asked to be excused so he could drive to Iowa for a family reunion. Defense counsel agreed to let him go in light of this purpose.

The next day, on June 18, 1996, the prosecutor informed the judge that after hearing Sergeant Ponessa's testimony she realized that he had not personally recovered the drugs. Therefore, in order to establish a chain of custody for the drugs seized at the scene, she wanted to call Officer Allen to testify that he had watched the plastic bag after Sergeant Ponessa went to the front of the house. Officer Allen's testimony would also have bolstered Sergeant Ponessa's testimony about seeing Mr. Tiger at the window and watching him throw the bag out the window.

Defense counsel, and apparently the prosecutor, had originally believed only Sergeant Ponessa was present at these occurrences, and, thus, the prosecutor had not endorsed Officer Allen as a witness. Defense counsel, therefore, asked the court to bar Officer Allen's testimony because he had not been endorsed and because defense counsel had not had an opportunity to depose him. In addition, because Sergeant Ponessa had been permitted to leave town the previous evening, the Sergeant could not immediately be recalled by defense counsel if needed in response to Officer Allen's testimony. Defense counsel stated, *"I might not have a big problem if all we were talking about was chain of custody.* He's also saying now he saw him coming out of the window, which is prejudicial evidence, which supports what Ponessa said." (emphasis added). The following exchange then took place.

THE COURT: *Off the record we discussed the possibility of mistrying the case, in light of the fact that Sergeant*

*Ponessa was released.* Does anybody wish to make a comment regarding that?

MS. MAHONEY: Well, Your Honor, *seeing as how this is an essential witness for chain of custody with the drugs, with which without him we cannot even make a submissible case, I'm not going to move for a mistrial. I don't think I can do that. But I would object to the witness being excluded at this point.*

MR. REGAN: My preference is that you exclude the witness's testimony and *at the close of the state's case, if they haven't proved the corpus delicti of this case, I would approach the bench and ask you to dismiss the case, under the circumstances* ; and I think that's the appropriate remedy, under the circumstances, due to the age of the case.

THE COURT: Has there been a speedy trial motion filed in this case?

MR. REGAN: No.

THE COURT: I think that—

MR. REGAN: Not by me. In fact, Judge, I think I'm the third attorney on this case, and I don't recall seeing one in the discovery and documents that I have gotten from the second attorney.

THE COURT: I don't recall seeing any.

MS. MAHONEY: There have been several defense continuances.

MR. REGAN: That's true.

THE COURT: Given your due process concerns and given the state's needs to call in an essential witness, *I'm going to go ahead and grant on my own motion, allow for a mistrial.* All right. We'll bring the jury down and mistry the case. Stick around, and we'll specifically set this again.

MR. REGAN: Would you then *note my request in my motion to dismiss with prejudice?*

THE COURT: Do you want a ruling now on your motion to dismiss—

MR. REGAN: To dismiss with prejudice.

THE COURT: *That will be denied.*

(emphasis added).

Prior to the beginning of the second trial, Mr. Tiger filed a motion to dismiss on the ground that double jeopardy barred retrial. Mr. Tiger argued that he had objected to the mistrial and there was no manifest necessity for a mistrial to be declared. The trial court denied this motion. During the course of the second trial, the prosecution introduced a videotape of the house where the search warrant was executed. That videotape showed evidence which the judge had previously ruled inadmissible in response to a motion in limine and which the prosecutor knew was on the tape when he showed it but failed to delete. Defense counsel therefore requested a mistrial on behalf of Mr. Tiger, which the trial court granted. A third trial was held resulting in conviction.

**B. General Principles Governing Double Jeopardy.**

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." **U.S. Const. amend. V.** This provision is applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). This right not to be subjected to double jeopardy attaches in a criminal case when the jury is impaneled and sworn. *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).

The Double Jeopardy Clause not only protects a defendant from retrial after being acquitted, but also gives a defendant a "valued right to have his trial completed by a particular tribunal...." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). There are, nonetheless, circumstances in which a defendant may be retried even though a jury was empaneled and a mistrial was declared before the jury reached a verdict. *Downum v. United States,* 372 U.S. 734, 735–36, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Wade,* 336 U.S. at 688, 69 S.Ct. 834. A hung jury provides the most common and obvious example. *See, e.g., Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892), *abrogated on other grounds, Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In these circumstances, we say the defendant's

right to have his trial completed by a particular jury must "be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade*, 336 U.S. at 689, 69 S.Ct. 834.

█ The United States Supreme Court has developed a two-part test to be used in determining whether double jeopardy principles have been violated when a trial results in a mistrial. The first part of the test requires the court to determine whether the defendant consented to the mistrial. If so, then double jeopardy principles do not apply and no further inquiry need be made unless the prosecutor intended to provoke a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

If the defendant did not consent to a mistrial, then a mistrial will bar retrial unless the court finds that there was a "manifest necessity" for a mistrial. As Justice Story wrote in first setting out the "manifest necessity" test in *United States v. Perez*, 9 Wheat. 579, 6 L.Ed. 165 (1824):

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

*Id.* at 580. Here, the State claims both that Mr. Tiger consented to a mistrial and that there was a manifest necessity to declare a mistrial. We examine both arguments in turn.

### C. Consent to Mistrial.

█ There is no dispute that Mr. Tiger did not expressly consent to the mistrial. "However, consent may always be implied from the totality of circumstances attendant on the declaration of a mistrial." *State v. Tolliver*, 839 S.W.2d 296, 299 (Mo. banc 1992). The State and Mr. Tiger disagree as to whether such implied consent was shown here. The State argues that it was, relying on *Tolliver*. The defense argues that no consent can be implied, relying on *State ex rel. Reynolds v. Kendrick*, 868 S.W.2d 134 (Mo.App.1993), and the latter's interpretation of *Tolliver*.

In *Tolliver*, a prosecution witness mentioned a matter during direct examination despite the court's prior ruling that the matter should not be mentioned. The following exchange then took place:

> [DEFENSE COUNSEL]: Judge, this was the subject of a motion in limine that was made less than an hour ago. I feel it's a deliberate attempt by the prosecution—
>
> THE COURT: I'm going to grant the mistrial. I can't stand that kind of conduct. I will not permit it.
>
> [DEFENSE COUNSEL]: I'll ask that it be with prejudice.
>
> THE COURT: No, I'll declare a mistrial.

*Tolliver*, 839 S.W.2d at 297–98. When a second trial began, the defendant moved to dismiss, alleging that the Double Jeopardy Clause prohibited retrial. The court overruled the motion. On appeal, the Missouri Supreme Court held that, although the defendant had not expressly consented to the mistrial, he had impliedly done so. The Court pointed out that the defendant initially objected to the witness's testimony and asked to approach the bench. *Id.* at 299. Stating that the "[k]ey to determining implied consent is whether the defendant had an opportunity to object," the Court noted that the defendant in *Tolliver* had such an opportunity, as demonstrated by the fact that the defendant requested that the mistrial be with prejudice. *Id.* at 300. The Court also held that the defendant's request that the mistrial be with prejudice was not specific enough "to apprise the trial court of a request that jeopardy attach," *Id.*, because once the court had said that the mistrial would not be with prejudice, defense counsel failed to indicate that he objected to proceeding with a second trial.

The State, and Judge Hanna in dissent, argue that this case is identical to *Tolliver*. In particular, they argue, here, as in *Tolliver*, Mr. Tiger did not specifically object to the trial court's declaration of a mistrial, but rather defense counsel merely made a motion to dismiss with prejudice, which was denied

by the court. The dissent also cites a number of cases from other jurisdictions which generally recognize that consent can be implied from silence or from a failure to object. We agree with that principle, but fail to see its application here, where defense counsel did object on two separate occasions.

Rather, we agree with Mr. Tiger that this case bears more factual similarity to *Reynolds*. In *Reynolds*, the prosecutor asked the judge to recuse himself. In response, defense counsel suggested that the prosecutor present his remaining evidence, at the conclusion of which the defendant would move for dismissal or acquittal. The judge then granted a mistrial *sua sponte*. *Reynolds*, 868 S.W.2d at 135. Upon retrial, the defendant filed a motion to dismiss, which was denied by the trial court. On appeal, the Eastern District of this Court held that the Double Jeopardy Clause barred the defendant's retrial. *Id.* at 137. In so ruling, the Court interpreted *Tolliver* to require a consideration of all of the circumstances to determine whether consent could be implied. *Reynolds* rejected a mechanistic rule requiring a denial of double jeopardy whenever the defendant fails to make a second objection to the grant of a mistrial. *Id.* at 136.

In *Reynolds*, the defendant had expressed his desire that the trial continue by suggesting that the prosecutor continue with his evidence, at the conclusion of which the defendant would move for dismissal or acquittal. *Id.* at 137. The Court said this distinguished *Reynolds* from *Tolliver*, noting that in the latter case the inference that the defendant consented to the mistrial was strengthened "because the mistrial was declared by the court after defense counsel's objection to improper evidence which was highly prejudicial to defendant. Thus, although his objection did not include an express request for a mistrial, defense counsel's silence when the trial judge indicated his intention to declare the mistrial could logically be interpreted as consent." *Id.*

The defendant in *Reynolds*, by contrast, did not object to introducing evidence; it was the State who had failed in its proof. As the court stated, "Defense counsel made no objection to the introduction of evidence. No

evidence was prejudicial to defendant. Indeed, it was the prosecution's case which was in shambles and the prosecuting attorney who initiated the suggestion that the trial should be aborted by requesting the recusal of the trial judge." *Id.*

■ We agree with Mr. Tiger that the facts of this case are more similar to the facts of *Reynolds* than to *Tolliver*, and that the teachings of both cases require us to hold that double jeopardy attached. As noted earlier, in *Tolliver*, it was defense counsel who objected to the admission of prejudicial testimony that the officer was a member of the sex crimes unit. The court was, thus, trying to undo the prejudice to the defense from this remark when the court broached the subject of mistrial. Defense counsel at no point indicated that he wished to proceed despite the improper testimony by the officer. Instead, he asked that the dismissal be with prejudice. When the court said no, defense counsel simply remained silent rather then object to this ruling. The Supreme Court held that his silence implied consent. 839 S.W.2d at 299–300.

Here, by contrast, the question of mistrial arose due to a failure of the prosecution to endorse a key witness to establish chain of custody and to bolster another officer's testimony about seeing the defendant at the window with the drugs. The court was trying to decide how to deal with this problem of proof caused by the prosecutor's failure to endorse a necessary witness. Defense counsel said he "might not have a big problem if all we were talking about was chain of custody," but that he did not want the witness bolstering the other officer's testimony. The defendant did not ever indicate he wanted a mistrial. Rather, when the court said it was considering a mistrial, it was the prosecutor who implied that she wanted one if her witness did not testify. However, she said she knew she could not ask for one since it was her failure of proof which was the cause of the potential mistrial. This comment makes no sense except as a recognition that if she requested a mistrial in these circumstances, double jeopardy might attach.

At this point, unlike in *Tolliver* but like the defendant in *Reynolds*, **defense counsel**

stated that he wanted to proceed with the trial. Since the State could not make its case, he indicated that he anticipated making a motion to dismiss the case for failure to prove the corpus delicti. He had already, as noted, indicated that he would not have a "big problem" if the witness were just testifying on chain of custody. The judge, nonetheless, questioned the parties about any speedy trial claims and then said she was *sua sponte* granting a mistrial. She did this despite counsel's immediately preceding request that she proceed with the case so that he would later be able to move to dismiss because of the State's failure of proof, and despite the prosecutor's express recognition that the State was barred from moving for a mistrial. On these facts, we disagree with the dissent that defense counsel had an obligation to even more directly inform the court that double jeopardy concerns were present. In context, it is evident that all concerned were aware of this and that it was indeed the key reason for the concern of the prosecutor and the court about declaration of a mistrial.[1]

Moreover, at this point, and again unlike the defendant in *Tolliver*, defense counsel *renewed* his motion to dismiss with prejudice, asking for a specific ruling on the motion. The court again denied the motion. Defense counsel had, thus, once asked for the case to proceed, the State had indicated it did not want to proceed but could not ask for a mistrial, the court then *sua sponte* said it would declare a mistrial anyway, and defense counsel then again objected stating that at least any dismissal should be with prejudice. The court denied this request. We fail to see what else counsel could reasonably have done to indicate his lack of consent to a mistrial.

There would have been no point to making yet a third objection. Unlike in *Tolliver*, counsel had already objected twice. Like in *Reynolds* and unlike in *Tolliver*, counsel had indicated both that he wanted to proceed with trial and then that he wanted any dismissal to be with prejudice. This fully distinguishes *Tolliver*, and puts this case squarely within *Reynolds*, a case which the dissent does not discuss but with which it impliedly disagrees. We believe that *Reynolds* properly applies the principles of double jeopardy in a manner consistent with *Tolliver*, and that those principles apply here. Accordingly, we do not find that defense.counsel impliedly consented to a mistrial.

### D. Manifest Necessity.

The next issue for the Court to address is whether there was manifest necessity for a mistrial. The manifest necessity test is not meant to be a "rigid formula," *Wade*, 336 U.S. at 690, 69 S.Ct. 834, and the Supreme Court has declined to "formulate rules based on categories of circumstances which will permit or preclude retrial," *United State v. Jorn*, 400 U.S. 470, 480, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Other cases, however, give some guidance as to what constitutes manifest necessity. Thus, as noted, where there is a hung jury, there is a manifest necessity for declaration of a mistrial. *See Logan*, 144 U.S. at 298, 12 S.Ct. 617. Again, double jeopardy principles do not bar retrial after a mistrial when a juror is acquainted with the defendant, *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891), or when a juror was also on the grand jury that indicted the defendant,

---

1. The dissent also suggests that Mr. Tiger failed to preserve his double jeopardy claim because he failed to explicitly either cite the court to the article and section of the constitution containing the double jeopardy clause or to quote the relevant constitutional provision, as is ordinarily required in order to preserve a constitutional objection for appeal. The cases cited by the dissent govern the specificity with which Mr. Tiger was required to raise the double jeopardy issue when the State actually proceeded against him in a second and later a third trial. The State does not claim that Mr. Tiger was insufficiently specific in raising the issue at those trials, however, and the dissent does not suggest otherwise. We could not logically require him to preserve it at his first

trial, since no double jeopardy would yet have occurred. It only arose once the State decided to proceed against Mr. Tiger a second time. For this reason, the issue before us here is not whether Mr. Tiger adequately preserved the constitutional double jeopardy issue once he was in fact subjected to double jeopardy, but rather whether Mr. Tiger adequately informed· the court at his first trial that he wished to proceed with that trial (and have the opportunity to move for a directed verdict due to the State's failure of proof) and that he did not consent to a mistrial unless it was with prejudice. For the reasons noted, we hold that he did not impliedly consent to a mistrial.

*Thompson v. United States,* 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894).

Similarly, no one questions the State's right to retry a case if a conviction is reversed on appeal for reasons other than the sufficiency of the evidence. *See Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). In such cases, the Supreme Court has stated that such a rule is necessary to ensure the "sound administration of justice" because:

> "Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction."

*Id.* at 38, 109 S.Ct. 285 (quoting *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)). *See also Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (holding that Double Jeopardy Clause does not bar retrial where conviction is reversed on sole ground that evidence was insufficient to sustain verdict).

■ These same principles have led the courts to hold that "[a] trial judge properly exercises his discretion to declare a mistrial if . . . a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." *Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). In other words, if continuing with the trial would inevitably result in reversal on appeal and remand for a new trial, then there is no point to allowing the process to continue; manifest necessity requires a mistrial to avoid the farce of continuing the trial in the face of a certain reversal.

Here, the prosecution wanted a mistrial so that it could endorse and present a new witness. "[T]he strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Arizona v.*

*Washington,* 434 U.S. 497, 508, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). In such cases, the Court will not adopt a *per se* rule that manifest necessity can never exist. *See Wade,* 336 U.S. at 691, 69 S.Ct. 834. "Such a rigid formula is inconsistent with the guiding principles of the *Perez* decision to which we adhere." *Id.* at 691, 69 S.Ct. 834. However, the Supreme Court has stated that such cases require a "high degree" of necessity "before concluding that a mistrial is appropriate." *Washington,* 434 U.S. at 507, 98 S.Ct. 824.

Mr. Tiger argues that, here, the prosecution's failure to adequately prepare its case by listing all necessary witnesses did not meet the high standard needed to create manifest necessity for a mistrial. In support, he relies on *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In *Jorn,* the trial judge declared a mistrial because he believed various prosecution witnesses had not been adequately advised of their rights. The Supreme Court held that retrial was barred, stating, "The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee." *Id.* at 486, 91 S.Ct. 547.

Similarly, in *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), after the jury had been empaneled and sworn, the prosecutor asked that the jury be discharged because its key witness on two counts was not present. The defendant moved that those two counts be dismissed and that trial continue on the remaining counts. The court denied the defendant's motion and discharged the jury. When he was retried, the defendant claimed his right to be free from double jeopardy was violated. The Supreme Court agreed, stating:

> The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. While their absence might have justified a continuance of the case in view of the fact that they were under bond to appear at that time and place, the question presented here is entirely different from that involved in the

exercise of the sound discretion of the trial court in granting a continuance in furtherance of justice. The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy.

*Id.* at 737, 83 S.Ct. 1033.

The State argues that these cases do not apply here, because here the trial court was faced with the choice between either allowing Officer Allen to testify even though he had not been properly endorsed, which would almost certainly have resulted in reversal due to the absence of Sergeant Ponessa and the failure to endorse Officer Allen prior to trial, or a dismissal with prejudice following the close of the prosecutor's case if Officer Allen was not allowed to testify about the chain of custody. The State claims, therefore, that declaring a mistrial was a necessity to avoid those two undesirable alternatives and "the dilemma faced by the trial court could not have been cured by some means short of a mistrial."[2]

■ We disagree. There is no indication that here the only alternatives available were either certain reversal or declaration of a mistrial. The trial judge could have considered granting a continuance in order to allow defense counsel an opportunity to prepare for Officer Allen's testimony and to see if Sergeant Ponessa could be found and brought back within a reasonable time if defense counsel said he was needed in response to Officer Allen's testimony. *See, e.g., Jorn,* 400 U.S. at 487, 91 S.Ct. 547 (holding that mistrial was not manifest necessity and stating that "no consideration was given to the possibility of a trial continuance...."); *Downum,* 372 U.S. at 737, 83 S.Ct. 1033 (absence of key witness may have justified continuance, but did not create manifest necessity for mistrial). Indeed, Sergeant Ponessa would only have been needed if Officer Allen testified to seeing Mr. Tiger

throw the bag out the window or other matters beyond the chain of custody issue essential to the State's case. Defense counsel himself said at the conference at which the mistrial was declared that he "might not have a big problem" with calling Officer Allen on chain of custody issues, but was concerned about his testimony on other issues if he could not then recall Sergeant Ponessa. Given this concession by defendant, mistrial could have been avoided if the court limited Officer Allen's testimony to chain of custody issues only.

Because the State has therefore failed to show manifest necessity, double jeopardy principles were violated by again putting Mr. Tiger in jeopardy for the same offense. The court therefore erred in denying his motion to dismiss. Accordingly, we reverse the judgment of conviction.[3]

RIEDERER, J., concurs.

HANNA, J., dissents in separate dissenting opinion.

HANNA, Judge, dissenting.

I respectfully dissent. We are concerned here with making an objection which is understood to raise a double jeopardy claim. Although I do not reach the second point in the majority opinion, I agree with the majority that the facts do not show manifest necessity for the mistrial.

The trial court invited counsel's comments on a mistrial. The response to the court's invitation, however, fell short of raising the defendant's Fifth Amendment right not to be twice placed in jeopardy. In fact, the defendant's response appears to have misled the court into believing that the defendant's Sixth Amendment rights to a speedy trial were about to be violated. The vagueness of the statement to the court is particularly troubling considering the simplicity in which double jeopardy rights may be preserved. A proper objection need only make reference to the double jeopardy clause. In that event,

---

**2.** The State also argues that it was Mr. Tiger's burden to show there were alternatives to a mistrial. It cites nothing to support this argument, and we reject it. The issue is whether such alternatives exist, not who proposed them.

**3.** Because of our resolution of this issue, we need not reach the other two claims raised on appeal.

opposing counsel and the court would not find it necessary to engage in fine judicial distinctions in reasoning in order to determine what is meant by the objection. Counsel's "preference," if we consider a "preference" to be a proper method of preserving the rights, was unclear and can be considered a double jeopardy objection only after much judicial analysis and a good amount of speculation.

The defendant was convicted of trafficking drugs in the second degree, § 558.016, RSMo 1994, and sentenced as a prior drug offender, §§ 195.275, 195.295 and a prior and persistent offender, §§ 558.016 and 558.019. This case was first tried before the Honorable Justine Del Muro. The jury was chosen and sworn. After two police officers had testified, it became apparent that the assistant prosecuting attorney could not establish the chain of custody of the crack cocaine without the testimony of Officer Allen, who had not been endorsed by the state. Defense counsel objected to allowing the state to endorse the police officer as a witness. Before the trial commenced on the second day, counsel and the court had an off-the-record discussion about the state's failure to endorse Officer Allen. The court and the attorneys went on the record and Judge Del Muro noted that they had been discussing a mistrial. The judge pointedly invited counsel to comment about the proposed mistrial. Because there was not a specific, straightforward response setting forth the defendant's double jeopardy rights as a basis of the objection, it was waived and the defendant impliedly consented to the mistrial.

Double jeopardy is a personal right which, if not properly raised, is waived. *See Peretz v. U.S.*, 501 U.S. 923 936, 111 S.Ct. 2661, 2669, 115 L.Ed.2d 808 (1991)(citing *U.S. v. Bascaro*, 742 F.2d 1335, 1365 (11th Cir.1984), *cert denied sub nom. Hobson v. U.S.*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985)); *State v. Harper*, 353 Mo. 821, 184 S.W.2d 601, 604 (1945).

The Double Jeopardy Clause protects a defendant with a valued right not to be retried after an acquittal. It also allows a defendant to have his trial completed by a particular tribunal, with the exception that the defendant's right to have his trial completed by a particular jury will "be subordinated to the public's interest in fair trials designed to end in just judgments," *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), or when the ends of public justice would be defeated. *Illinois v. Somerville*, 410 U.S. 458, 459, 93 S.Ct. 1066, 1067, 35 L.Ed.2d 425 (1973). As a general rule, the Double Jeopardy Clause bars retrial if a judge grants a mistrial without the defendant's request or consent. *United States v. Jorn*, 400 U.S. 470, 479–481, 91 S.Ct. 547, 554–55, 27 L.Ed.2d 543 (1971); *State v. Tolliver*, 839 S.W.2d 296, 299 (Mo. banc 1992).

Our review of whether the defendant requested or consented to a mistrial "turns not on a mechanical formula, but on a careful analysis of the facts of each case." *Tolliver*, 839 S.W.2d at 299. In this case, the defendant objected to Officer Allen's testimony even though he had been afforded an opportunity to discuss Allen's testimony that morning.

The issue is whether the defendant impliedly consented to the mistrial by failing to raise a double jeopardy claim. The courts have given the same effect to an implied waiver as an express waiver. Both effectively vitiate any double jeopardy bar to retrial. *Camden v. Circuit Court of Second Judicial Circuit*, 892 F.2d 610, 614, (7th Cir.1989), *cert. denied*, 495 U.S. 921, 110 S.Ct. 1954, 109 L.Ed.2d 316 (1990). Consent may be implied from the totality of the circumstances attendant on the declaration of a mistrial, *United States v. Puleo*, 817 F.2d 702, 705 (11th Cir. 1987), *cert. denied*, 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987); *Tolliver*, 839 S.W.2d at 299, and may be inferred from silence where there was an opportunity to object, but defendant fails to do so. *Tolliver*, 839 S.W.2d at 300(citing *United States v. DiPietro*, 936 F.2d 6, 9–10 (1st Cir.1991)); *Puleo*, 817 F.2d at 705.

The following cases have arrived at the same result: *United States v. Aguilar–Aranceta*, 957 F.2d 18, 21–22 (1st Cir.1992), *cert. denied*, 506 U.S. 834, 113 S.Ct. 105, 121 L.Ed.2d 64 (1992)(ruling defendant's silence, when court declared mistrial on count on which jury was deadlocked, waived double-

jeopardy claim); *Puleo,* 817 F.2d at 705 n. 5 (determining that "consent may be implied where the trial court's intent to declare a mistrial is clear, and the defense has an opportunity to object, but does not"); *United States v. Buljubasic,* 808 F.2d 1260, 1265–66 (7th Cir.1987), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987)(holding that the defendant's silence constituted consent when judge proposed mistrial and *invited comments* )(emphasis added); *United States v. Smith,* 621 F.2d 350, 351–52 (9th Cir.1980), *cert. denied,* 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981)(finding that defense counsel's failure to object to mistrial, and his discussion of defendant's retrial, amounted to implied consent to court's *sua sponte* declaration of mistrial); *United States v. Gordy,* 526 F.2d 631, 635 n. 1 (5th Cir.1976)(holding that if a defendant "does not object timely to the declaration of a mistrial, his double jeopardy claim may be vitiated by his consent"); *United States v. Beckerman,* 516 F.2d 905, 908–09 (2nd Cir.1975) (holding implied consent where defendant could have objected to jury discharge when court gave him the opportunity to address another issue); *United States v. Goldstein,* 479 F.2d 1061, 1066–67 (2nd Cir.1973), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973)(defendant failed to recant previously denied mistrial motion or object, despite opportunity to do so); *United States v. Phillips,* 431 F.2d 949, 950–51 (3rd Cir.1970)(defendant failed to object to court's proposal to discharge jury because of irreconcilable disagreement).

When a judge declares a mistrial *sua sponte* there is a concern that the defendant has sufficient time to make an objection. The *Tolliver* court noted that the "[k]ey to determining implied consent is whether the defendant had an opportunity to object." *Tolliver,* 839 S.W.2d at 300. In *Tolliver,* the court determined that the defense attorney had time to register her objection. *Id.* at 298. Because she had time to object and failed to make a specific objection to the mistrial, the court held that the defendant impliedly consented to the mistrial. *Id.* at 299–300.

The court and counsel here had previously held an off-the-record discussion concerning a mistrial, which is evident from the first remarks that Judge Del Muro made when the discussion returned to the record. The subject of a mistrial was under discussion and the court was ready to set a new trial date. There is no question but that counsel had sufficient opportunity in which to make it clear to the court that the basis for the objection was his client's double jeopardy right.

Thus, we consider the adequacy of the "objection" and whether opposing counsel and the court were informed that the defendant raised his double jeopardy rights. Defense counsel expressed a "preference" to exclude the witness's testimony so that, at the close of the state's case, he "would ask [the court] to dismiss the case." [1] *After,* not before, the mistrial was declared, he requested that the motion to dismiss be with prejudice. The majority holds that these two requests satisfied the specificity requirements. I suppose that the statement to the court may be understood to mean that he wanted to continue with the evidence, although the defendant's statement conveys other meanings. First, we should not construe a "preference" as an objection. More importantly, the statement can more readily be interpreted as raising the defendant's speedy trial rights.

Whether an objection is sufficient to preserve the double jeopardy claim is answered in *Tolliver.* The Missouri Supreme Court repeatedly said that the objection must be specific if it is to preserve the double jeopardy claim. *Tolliver,* 839 S.W.2d at 299–300. The defendant's attorney in Tolliver objected to the testimony and requested that the court's dismissal be with prejudice. The court said that "[a]n objection need not only be timely but also specific." *Id.* The court continued that once it became clear that the trial court was going to declare a mistrial, "it is incumbent on defense counsel *to state clearly her objection and her desire to pro-*

---

**1.** This is an obvious reference to the defendant's motion for a directed verdict which was to be filed at the conclusion of the state's case. Objec-

tions are generally put in the present tense, and are not couched in what one may expect to do in the future.

*ceed."* *Id.* (emphasis added). With respect to specificity of the objection, the court required that, *"[s]imply asking that the declaration of the mistrial be 'with prejudice' was not specifically sufficient to apprise the trial court of a request that jeopardy attach."* *Id.* (emphasis added). The court repeated for the third time, that "[i]t was necessary for counsel at the *first* trial clearly to state this ground." *Id.* (emphasis added).

Tolliver was repeating the longstanding rule requiring a constitutional objection to be *specific* and *timely.* In *State v. Flynn,* the Missouri Supreme Court held that "[t]he sections of the Constitution claimed to have been violated must be specified." 519 S.W.2d 10, 12 (Mo. banc 1975). The court in *Flynn* also held that a constitutional search and seizure objection which was first raised in the defendant's motion for new trial, rather than in the motion to suppress, preserved nothing for appeal. *See id.* The Missouri Supreme Court following the rationale of the court in *Flynn* held that a constitutional question will be waived unless the party: (1) raises the constitutional question at the *first* available opportunity; (2) designates *specifically* the constitutional provision claimed to have been violated, *such as by explicit reference to the article and section or by quotation of the provision itself;* (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review. *Callier v. Director of Revenue,* 780 S.W.2d 639, 641 (Mo.1989)(emphasis added)(quoting *City of Eureka v. Litz,* 658 S.W.2d 519, 521 (Mo.App.1983). *See also State v. Pullen,* 843 S.W.2d 360 364 (Mo. banc 1992), *cert. denied,* 510 U.S. 871, 114 S.Ct. 200, 126 L.Ed.2d 158 (1993))(quoting *State v. Flynn,* 519 S.W.2d 10, 12 (Mo.1975)).

To the same result, the Missouri Supreme Court in *State v. Hadley,* held that a constitutional objection "must be raised at the earliest opportunity and preserved at each stage of the judicial process." 815 S.W.2d 422, 424 (Mo. banc 1991). The *Hadley* court also held that a constitutional objection first made in the motion for new trial did not preserve the matter for review. *Id.* These cases insist on specificity and timeliness of constitutional objections.

Counsel's statement regarding his "preference," and his request that defendant's motion to dismiss be with prejudice, was ambiguous and vague. In the case before us, the terms "double jeopardy," "jeopardy," or words to that effect, are not found in the dialogue between court and counsel. Counsel expressed a preference to exclude the witness' testimony and at the close of the state's case he will move for a dismissal, which would be appropriate "due to the *age of the case.*" The majority places a great deal of importance on this statement, interpreting it to mean that "defense counsel stated he wanted to proceed with the trial." Admittedly, that may be one interpretation. However, even if we accept that explanation, the request to continue with the trial was not in the context of a double jeopardy objection, but rather with specific reference to the defendant's speedy trial rights. Counsel gave his reason for his "objection" as *"due to the age of the case,"* which clearly suggests a speedy trial concern. It is not surprising that the judge immediately inquired about the defendant's speedy trial rights. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *State v. Bolin,* 643 S.W.2d 806 (1983)(adopting the holding of *Barker v. Wingo* ). A speedy trial is guaranteed by Article I, § 18(a) of the Missouri Constitution and the Sixth Amendment of the United States Constitution. *See State v. Davis,* 903 S.W.2d 930, 935–36 (Mo. App.1995). Thus, the statement not only failed to inform the court of the defendant's Fifth Amendment right under the Double Jeopardy Clause, it apparently misled the court into believing that it was a speedy trial claim under the Sixth Amendment.

Considering the totality of the circumstances, the invited response of the defendant falls short of informing opposing counsel and the court of a double jeopardy claim. The holding of *Tolliver* is clear. Simply requesting that the mistrial be "with prejudice" is *"not a sufficiently specific objection* to preserve the objection of double jeopardy, and thus, is no bar to the second trial." *Id.* at 300 (emphasis added). This is true no matter how many times counsel repeats his request that the mistrial be with prejudice.

Case law of this state requires that the objection be stated in a specific, straightforward manner, so that it is clear to opposing counsel and the court in order to allow for an informed ruling.