

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC93321 |
| | ) | |
| BRUCE PIERCE, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable Thomas C. Grady, Judge

*Opinion issued June 24, 2014*

Bruce Pierce appeals his convictions for second-degree trafficking and resisting arrest. He claims that both charges should have been dismissed under article I, section 19, of the Missouri Constitution because the trial court lacked authority to retry him after the end of the court term following the term in which his earlier trial ended in a mistrial. In addition, Pierce claims that the trial court erred in refusing his request that the jury be instructed regarding possession as a lesser included offense of second-degree trafficking. Finally, Pierce claims that the evidence was not sufficient to support his conviction for resisting arrest.

The Court rejects the first claim because Pierce failed to raise it at a time when the trial court could still comply with the constitutional deadline for retrials. On Pierce's second claim, the Court holds that the trial court erred in refusing to give the requested

lesser included offense instruction.  Finally, the Court rejects Pierce's third claim because

the evidence was sufficient for his conviction for resisting arrest.  Accordingly, the Court

affirms Pierce's conviction for resisting arrest, but vacates his conviction for second-

degree trafficking and remands the case for further proceedings.

## I.    *Facts*

On May 5, 2010, two police officers in a patrol car observed Pierce sitting on the

front steps of a vacant building.  Pierce began running from the officers when one of

them shouted:  "Hey, it's the police.  How you doing?"  The officers pursued Pierce in

their cruiser.  When Pierce left the road, one of the officers pursued him on foot.  During

the chase, this officer observed Pierce throw an object on the ground.  The officer

retrieved the item, saw it was a clear plastic bag containing a substance he believed to be

narcotics, and continued to chase after Pierce.  Trailing Pierce by about 20 feet, the

officer again identified himself as a police officer, told Pierce that he was under arrest,

and ordered him to stop.  Pierce continued running through a yard and into a nearby

residence, where the officer caught and restrained him.

Pierce was charged with second-degree trafficking under section 195.223 and

resisting arrest under section 575.150.1.[1]   His first trial, which began on November 9,

---

[1]   All statutory references are to RSMo 2000 unless otherwise indicated.  Sections 195.222
(first-degree trafficking) and 195.223 (second-degree trafficking) were amended in August 2012.
One effect of the amendment was to increase the amount of cocaine base required for second-
degree trafficking from *two* grams to *eight* grams.  Section 195.223 RSMo Supp. 2012*; S.B. 628,
96th Gen. Assemb., 2d Reg. Sess. (Mo. 2012).*  But a defendant must be tried for the offense as
defined by the law that existed at the time of the offense.  *State v. Edwards,* 983 S.W.2d 520, 521
(Mo. banc 1999); Section 1.160.  Accordingly, because the crime occurred in 2010 and Pierce

2010, ended in a mistrial when the jury was unable to reach a unanimous verdict on either count. After declaring this mistrial, the trial court remanded Pierce into custody and set his case for retrial beginning January 10, 2011. This setting later was continued seven times, however, for a variety of reasons. Pierce did not object to any of these continuances. As a result, his retrial did not begin until November 30, 2011. On that day, for the first time, Pierce moved to have his charges dismissed on the ground that article I, section 19, requires that his trial begin no later than the end of the term following the term in which his earlier mistrial occurred. Because that deadline had passed, Pierce contended that the trial court lacked authority to retry him. The trial court overruled Pierce's motion to dismiss, and the case proceeded to trial.

During the instruction conference after the close of evidence, the trial court announced that it would give the state's proposed instruction for drug trafficking in the second degree. Pierce did not object to this instruction but requested the court also instruct the jury on the lesser included offense of possession of a controlled substance under section 195.202.1. The trial court refused this request, and the court also overruled Pierce's motion for a directed verdict on the resisting arrest charge, finding that the evidence was sufficient to support that charge. The jury found Pierce guilty of resisting arrest and trafficking in the second degree, and the trial court sentenced him to concurrent prison terms of seven and ten years, respectively. Pierce appealed, and this Court has jurisdiction under article V, section 10, of the Missouri Constitution.

---

was sentenced in May 2012, the 2012 amendments are not relevant to this case, and Pierce is subject to the previous version of section 195.223.

## II.     *The Trial Court did not Lack Authority to Retry Pierce*

Pierce contends that that the trial court lacked authority to retry him under article I, section 19, of the Missouri Constitution.  This section provides, in relevant part, that no person shall:

> be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury; ***but if the jury fail to render a verdict the court may, in its discretion, discharge the jury and commit or bail the prisoner for trial at the same or next term of court***; and if judgment be arrested after a verdict of guilty on a defective indictment or information, or if judgment on a verdict of guilty be reversed for error in law, the prisoner may be tried anew on a proper indictment or information, or according to the law.

Mo. Const. art I, § 19 (emphasis added).

Pierce's first trial began on November 10, 2010, i.e., during the November 2010 term of court.[2]  That trial ended in a mistrial when the jury was unable to reach a unanimous verdict.  The trial court's next term (i.e., the February 2011 term) began on February 14, 2011, and ended on May 6, 2011.  Because Pierce's retrial did not begin until November 2011, it is clear that the deadline in article I, section 19, was not met.  Because the trial court failed to retry him during "the same or next term of court," Pierce contends that the court lacked authority to retry him at all.

Pierce is not the first defendant to attempt to use the deadline in article I, section 19, to prevent a retrial after the first trial ended with a hung jury.  In *State v. Fassero*, 256

---

[2]  Because the St. Louis City Circuit Court has no local rule governing terms of court, section 478.205 establishes those terms.  It sets four terms each year, and those terms begin on the second Monday of each February, May, August, and November.

4

S.W.3d 109 (Mo. banc 2008), this Court rejected the same argument under very similar circumstances.

> Fassero argues that, under art. I, sec. 19, his second trial should have commenced before the end of June ("the same term") or during the next term, from July - September 2004. Because his second trial did not begin until January 18, 2005, Fassero asserts that the trial court did not have jurisdiction. Fassero raises this issue for the first time on appeal.
>
> Generally, a party on appeal "must stand or fall" by the theory on which he tried and submitted his case in the court below. *Walker v. Owen,* 79 Mo. 563, 568 (Mo. 1883). Under this general rule, issues that are not raised in the trial court are waived. *Id.* Although Fassero acknowledges this general rule, he argues that article I, section 19 deprived the second trial court of jurisdiction. And "jurisdictional" issues, he contends, may be raised for the first time on appeal. *Searcy v. State,* 981 S.W.2d 597, 598 (Mo. App. 1998).
>
> Fassero's argument results from a misunderstanding of jurisdiction. Jurisdiction describes the power of a court over the person of the defendant (personal jurisdiction) and the authority of the court to hear the particular kind of case (subject matter jurisdiction). *See generally,* 21 Am.Jur.2d *Criminal Law* section 503 (2007). The court had power over Fassero's person. It was empowered to hear criminal cases. The court, thus, had jurisdiction.
>
> Fassero did not object in the circuit court to the timing of his second trial under art. I, sec. 19. His art. I, sec. 19 objection is a constitutional claim that, to be preserved for appellate review, must be made at the first opportunity. *State v. Chambers,* 891 S.W.2d 93, 103-4 (Mo. banc 1994). If not raised at the first opportunity in the circuit court, a constitutional claim is waived and cannot be raised here. *Id.*

*Fassero*, 256 S.W.3d at 117 (Mo. banc 2008) (footnote omitted).

Accordingly, *Fassero* sets forth two holdings that, taken together, defeat Pierce's claim. First, *Fassero* holds that a defendant must raise a claim based on the retrial deadline in article I, section 19, "at the first opportunity" and, if he does not do so, that claim is waived. Second, *Fassero* holds that, if a defendant fails to raise this

5

constitutional deadline in a timely manner, the trial court's authority to retry the defendant is not affected by a failure to comply with that deadline.

Pierce seeks to distinguish *Fassero* by emphasizing that he raised his claim in a motion to dismiss the charges in the trial court, not on appeal as the defendant did in *Fassero*. But *Fassero* does not hold that a claim under the retrial deadline in article I, section 19, only needs to be raised in the trial court to be timely. It holds that such a claim "must be made at the ***first opportunity***." *Fassero*, 256 S.W.3d at 117 (emphasis added). Pierce's "first opportunity" to raise the constitutional retrial deadline in article I, section 19, was not in a motion to dismiss filed long after that deadline had passed. The trial court initially set Pierce's retrial in time to meet the constitutional deadline of May 6, 2011, i.e., the end of the term following the term in which his first trial occurred. As a result, Pierce had multiple opportunities to raise that deadline when the trial court was considering whether to continue his retrial prior to (and, ultimately, beyond) that date. He chose not to do so. Under *Fassero*, therefore, Pierce waived his claim under the retrial deadline in article I, section 19, because he failed to raise it at his earliest opportunity.

Enforcing a waiver in these circumstances "is in accord with the usual rule that the trial court must be given the opportunity to correct error ***while correction is still possible***." *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986) (emphasis added). The purpose of the constitutional deadline for timely retrials under article I, section 19, is not to create a trap for unwary trial judges or to produce a windfall (i.e., dismissal) for defendants who do not assert that deadline while compliance is still possible. The

6

purpose of this constitutional deadline is to ensure that neither the defendant nor the state is disadvantaged by stale evidence or fading memories when the only reason for the retrial is the first jury's failure to reach a verdict. If the defendant wants the benefit of this provision, he must assert it while compliance is still possible.

Pierce's claim assumes that article I, section 19, explicitly requires all charges to be dismissed whenever a case is not retried before the stated deadline. There is no constitutional language explicitly imposing that consequence, however, and this Court need not decide whether to infer that such a sanction was intended unless and until a defendant invokes this deadline while compliance is still possible and the trial court fails to comply. Here, Pierce did not do so. Accordingly, under the first holding in *Fassero*, Pierce has waived any claim for relief.

The second holding in *Fassero* precludes Pierce's argument that his article I, section 19, claim cannot be waived because it "goes to the very power of the state" to bring him before the trial court at all. The defendant in *Fassero* made this same argument, and the Court rejected it, holding that a failure to comply with the retrial deadline in article I, section 19, does not deprive the trial court of its "jurisdiction" to retry the defendant. *Fassero*, 256 S.W.3d at 117. Pierce cannot avoid this holding merely by using the word "authority" everywhere the defendant in *Fassero* used the word "jurisdiction." Because a defendant waives his claim under the constitutional retrial deadline in article I, section 19, by not raising it when compliance is still possible, *Fassero* necessarily – and explicitly – holds that the trial court's authority to retry the defendant is unaffected by this constitutional deadline unless and until the defendant

7

asserts that deadline in a timely manner. Accordingly, the trial court had authority to retry Pierce after the deadline in article I, section 19, passed because Pierce failed to assert that deadline when it was still possible for the trial court to comply.

### III. The Trial Court Erred in Not Giving Pierce's Requested Instruction on the "Nested" Lesser Offense of Possession

In the companion case, *State v. Jackson*, __ S.W.3d __ (Mo. banc 2014) (No. SC93108), the Court holds:

> The question presented in this case is whether the trial court can refuse to give a lesser included offense instruction requested by the defendant under section 556.046 when the lesser offense consists of a subset of the elements of the charged offense and the differential element (i.e., the element required for the charged offense but not for the lesser offense) is one on which the state bears the burden of proof. The answer, unequivocally, is no.

*Id.* at __ (slip op. at 1).

As explained in *Jackson*, a trial court commits error under section 556.046 in such circumstances because: (1) if the evidence is sufficient to convict the defendant of the charged offense, there is always a basis in the evidence to convict the defendant of a "nested" lesser offense; and (2) if the only difference between the charged offense and the "nested" lesser offense is an element on which the state bears the burden of proof, there is always a basis in the evidence to acquit the defendant of the charged offense because the jury is free to disbelieve all or any part of the evidence concerning that differential element. *Jackson*, __ S.W.3d at __ (slip op. at 24-28).

8

Here, the state charged Pierce with second-degree trafficking under

section 195.223.3, and the jury was instructed:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> > First, that on or about May 5, 2010, in City of St. Louis, State of Missouri, the defendant possessed more than 2 grams of a mixture or substance containing cocaine base, a controlled substance,
> >
> > Second, that defendant knew or was aware of the presence and nature of the controlled substance,
>
> then you will find the defendant guilty under Count I of trafficking in the second degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Pierce did not object to this instruction. Instead, he requested that the trial court

also instruct the jury on the lesser included offense of possession of a controlled

substance under section 195.202.1.[3] The only element required for second-degree

trafficking that is not also required for possession (i.e., the differential element) is that the

jury cannot convict the defendant of second-degree trafficking unless it finds beyond a

---

[3] Pierce tendered the following verdict director for the "nested" lesser offense of possession:

> As to Count I, if you do not find the defendant guilty of trafficking in the second degree as submitted in Instruction No. ___, you must consider whether he is guilty of possessing a controlled substance.
>
> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> > First, that on or about May 5, 2010, in the City of St. Louis, State of Missouri, the defendant possessed cocaine base, a controlled substance, and
> >
> > Second, that defendant knew or was aware of its presence and nature,
>
> Then you will find the defendant guilty under Count I of possessing a controlled substance.

9

reasonable doubt that the defendant was in possession of more than two grams of cocaine base. For the reasons set forth in *Jackson*, the Court holds that the trial court erred in refusing Pierce's request to instruct the jury on the "nested" lesser offense of possession. Accordingly, Pierce's trafficking conviction must be vacated and the case remanded.

As in *Jackson*, the trial court refused to instruct on the lesser offense in this case because it concluded that – in light of the evidence showing that Pierce was in possession of cocaine base weighing more than two grams – all reasonable jurors must believe that evidence and find that the state proved this differential element beyond a reasonable doubt. This was error. *Cf. United Brotherhood of Carpenters & Joiners of Am. v. United States*, 330 U.S. 395, 410 (1947) ("No matter how clear the evidence, [defendants] are entitled to have the jury instructed in accordance with the standards which Congress has prescribed. To repeat, ***guilt is determined by the jury, not the court***.") (emphasis added).

Under *State v. Santillan,* 948 S.W.2d 574, 576 (Mo. banc 1997), the state concedes that the trial court cannot refuse to give a lesser offense instruction merely because Pierce failed to introduce affirmative evidence contesting the differential element (i.e., the weight of the cocaine base in Pierce's possession). Nevertheless, the state contends that Pierce was not entitled to an instruction on possession because he failed to put that differential element "in dispute," either by impeaching the credibility of the evidence supporting that element or otherwise creating a "real question" as to why the jury should disbelieve the evidence showing that the cocaine base in Pierce's possession weighed more than two grams. The state contends that Pierce failed to meet this requirement because all of the evidences showed that he was carrying more than two grams of cocaine

10

base and because Pierce never successfully impeached the credibility of that evidence or explained how or why a reasonable jury could refuse to find that element proved beyond a reasonable doubt.

This Court has often said that the jury is the sole and final arbiter of the facts and, in that role, the jury is entitled to believe or disbelieve all or any part of the evidence before it. *See, e.g., State v. Celis-Garcia*, 344 S.W.3d 150, 159 (Mo. banc 2011) ("Of course, the jury was free to believe or disbelieve any of the witness testimony."); *State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010) ("A jury may accept part of a witness's testimony, but disbelieve other parts.") (*quoting State v. Pond,* 131 S.W.3d 792, 794 (Mo. banc 2004)); *State v. Hineman,* 14 S.W.3d 924, 927 (Mo. banc 1999) ("The jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit and may believe or disbelieve all, part, or none of the testimony of any witness."). Some principles prove easier to utter than to abide, however, and so it is with this one.

If the Court is to be true to this oft-stated principle, then this Court must also acknowledge the unavoidable corollary that "evidence never proves any element until the jury says it does." *Jackson*, __ S.W.3d at ___ (slip op. at 2).

> No matter how strong, airtight, inescapable, or even absolutely certain the evidence and inferences in support of the differential element may seem to judges and lawyers, no evidence *ever* proves an element of a criminal case until all 12 jurors believe it, and no inference *ever* is drawn in a criminal case until all 12 jurors draw it.

*Jackson*, __ S.W.3d at ___ (slip op. at 16) (emphasis in the original).

Here, the trial court overruled Pierce's requested instruction on the lesser offense of possession because it concluded that no reasonable jury could believe the evidence

11

showing that Pierce possessed a controlled substance without also believing the evidence that the substance was cocaine base and that it weighed more than two grams. This was error. The decision of what evidence to believe or disbelieve belongs solely to the jury. In determining what instructions are supported by the evidence, the trial court (like the appellate court) is required to decide what facts a reasonable jury *may find* from the evidence, but it is never permitted to go further and decide what facts the jury *must find*.

The state attempts to characterize its argument in the familiar terms of a sufficiency review, i.e., that the evidence in this case does not support a conviction for possession, but that is plainly wrong. Because possession is a "nested" lesser offense of the charged crime of second-degree trafficking, any evidence that is sufficient to prove the elements of that charged crime must be sufficient to prove the subset of those elements that comprise the crime of possession.

The unstated premise of the state's argument is that the evidence in this case is not sufficient for a reasonable jury to find that Pierce's cocaine base weighed less than two grams. This assertion is reasonable, given the nature of the evidence, but it is wholly irrelevant. The jury was not required to find that Pierce's cocaine base weighed less than two grams in order to convict him of possession. "Less than two grams" is not an element of possession. Evidence containing undisputed – even undisputable – proof that the defendant possessed more than two (or 2,000) grams of cocaine base is sufficient to convict that defendant of possession because the jury is not required to make any finding about weight in order to return a guilty verdict for that crime. *See Jackson*, __ S.W.3d at __ (slip op. at 26) (evidence that defendant "was carrying a bazooka and a machete" is

12

irrelevant to whether the evidence is sufficient to support second-degree robbery because the jury does not have to decide whether the defendant was or was not armed in order to convict the defendant of that crime).

By the same token, the jury in this case did not have to find that Pierce's cocaine base weighed less than two grams in order to acquit him of second-degree trafficking. Under the instruction for second-degree trafficking, the jury was told that the state had the burden of proving beyond a reasonable doubt that this substance weighed more than two grams. Because a jury may always believe or disbelieve all or any part of the evidence before it, the state's burden of proof is carried only when the jury says it is, i.e., when the jury returns a unanimous guilty verdict.

The only thing the defendant has to do to hold the state to this burden of proof, or to put the elements of a crime "in dispute," is to plead not guilty. *See Jackson*, __ S.W.3d at __ (slip op. at 27-28); *State v. Moore*, 435 S.W.2d 8, 11-12 (Mo. banc 1968) ("It must be remembered, however, that the defendant here entered a plea of not guilty which puts in issue all facts constituting" the crime and the defendant's guilt). Accordingly, once the defendant pleads not guilty, there will always be a basis in the evidence to acquit the defendant at trial because the jury – and only the jury – is the final arbiter of what that evidence does and does not prove.

> [I]n a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to **stand between the accused and a potentially arbitrary or abusive Government** that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction. The trial judge is thereby barred from **attempting to override or interfere**

13

*with the jurors' independent judgment in a manner contrary to the interests of the accused*.

*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572-73 (1977) (emphasis added) (citations omitted).

As in *Jackson*, therefore, the Court holds that where the defendant requests the trial court to instruct the jury on a "nested" lesser offense, the trial court cannot refuse to give that instruction solely because the court concludes that the evidence is so overwhelming that all reasonable jurors must find the differential element proved beyond a reasonable doubt. "Unless waived, the right to trial by jury means that the jury – and only the jury – will decide what the evidence does and does not prove beyond a reasonable doubt." *Jackson*, __ S.W.3d at __ (slip op. at 21). Accordingly, the Court vacates Pierce's conviction for second-degree trafficking and remands the case for further proceedings.

**IV.** **The Evidence was Sufficient to Prove that Pierce Committed the Crime of Resisting Arrest**

Pierce asserts that the state did not present sufficient evidence to support his conviction for resisting arrest. This Court's review of this claim is limited to a determination of whether there was sufficient evidence admitted at trial for a reasonable jury to find Pierce guilty of this crime beyond a reasonable doubt. *State v. Silvey,* 894 S.W.3d 662, 673 (Mo. banc 1995). The Court considers the evidence (and reasonable inferences) supporting the jury's verdict in the light most favorable to that verdict and will disregard any evidence or inferences that are inconsistent with that verdict. *Id.*

Under section 575.150.1, Pierce committed the crime of resisting arrest if: (1) he knew or reasonably should have known that a law enforcement officer was making an arrest; (2) he resisted that arrest by using or threatening to use violence or physical force or by fleeing from the officer; and (3) he did so for the purpose of preventing the officer from completing the arrest. Pierce admits that he knew the officer was attempting to arrest him, and he admits that he ran from the officer so the officer could not do so. Pierce argues that he cannot be convicted of resisting arrest, however, because he started running before the officer decided to – or had grounds to – arrest him. In other words, because the officer did not attempt to arrest him (or have grounds to arrest to him) until he saw Pierce throw away the cocaine (which happened during, not prior to, Pierce's flight), Pierce argues that his flight cannot constitute resisting arrest.

Pierce relies on decisions from the court of appeals that hold that merely running from an officer is not resisting arrest if the officer was not attempting to arrest the defendant when he began to run. *See, e.g., State v. Long,* 802 S.W.2d 573, 577 (Mo. App. 1991). But these cases do not mean that a defendant is immune from arrest (or prosecution for resisting arrest) as long as he runs before the officer attempts to arrest him, nor would such a rule be supported by the language of the statute. *See State v. Chamberlin,* 872 S.W.2d 615, 618 (Mo. App. 1994) ("[d]uring a suspect's flight from a law enforcement officer, the actions of the suspect may constitute a separate crime, giving rise to a reason to arrest the suspect"); *State v. Hopson*, 168 S.W.3d 557, 561 (Mo. App. 2005) (evidence supported conviction for resisting arrest, even though the flight started before officers had grounds to arrest, because the defendant gave the

15

officers grounds to arrest by throwing narcotics out of his car and the defendant continued to flee after the officers attempted to arrest him).

Here, it does not matter whether the officers were attempting to arrest Pierce at the moment he started running. What matters is whether Pierce continued to run after the officer told Pierce to stop because he was under arrest. The evidence was sufficient for the jury to find that Pierce continued running after he dropped the bag that gave the officer probable cause to arrest him and, more importantly, that he continued to run after the officer told Pierce he was under arrest and ordered him to stop. Finally, the evidence was sufficient to prove that Pierce's purpose in continuing to run after being told he was under arrest was to avoid that arrest. Accordingly, Pierce's conviction for resisting arrest is affirmed.

## V. Conclusion

For the reasons set out above, Piece's conviction for resisting arrest is affirmed. His conviction for second-degree trafficking is vacated, however, and the case is remanded.

_____
Paul C. Wilson, Judge


Russell, C.J., and Fischer, J., concur; Breckenridge, J., concurs in section II of opinion of Wilson, J.; Teitelman, J., concurs in opinion of Wilson, J., except section II; Stith, J., concurs in part and dissents in part in separate opinion filed; Breckenridge, J., concurs in section II of opinion of Stith, J.; Teitelman, J., concurs in section I of opinion of Stith, J.; Draper, J., dissents in separate opinion filed; Stith, J., concurs in opinion of Draper, J.



# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC93321 |
| | ) | |
| BRUCE PIERCE, | ) | |
| | ) | |
| Appellant. | ) | |

**OPINION CONCURRING IN PART AND DISSENTING IN PART**

I agree that sufficient evidence supported Mr. Pierce's resisting arrest conviction.

Although I concur with the principal opinion that retrial of Mr. Pierce did not violate article I, section 19, I do so on different grounds. As set out in Section I below, Mr. Pierce did not waive his right to claim such a violation by not alerting the court of the deadline prior to its passage. It was not his responsibility to keep track of such deadlines for the court, and no objection was required as the passage of the deadline did not violate any of his rights; they could be violated only by the State's attempt to retry him. He did timely raise the article I, section 19 claim as soon as retrial occurred. By that point, however, he repeatedly had consented to delays in his retrial. Just as is the case with traditional double jeopardy rights, a violation does not occur when the defendant consents to the delay.

1

I disagree entirely with the principal opinion's holding that a trial court always must submit a lesser included offense instruction if requested to do so by a party. The principal opinion intentionally leaves vague the source of that requirement. In places, it implies that this obligation is inherent in the right to jury trial, yet it never says that a court's refusal to instruct down violates a defendant's right to jury trial. It could not do so, for, as discussed in Section II below, the United States Supreme Court has made it clear that the right to jury trial does not bar the courts from limiting lesser included offense instructions to those that a reasonable juror could find supported by the evidence. Rather, the United States Supreme Court has said that submitting unsupported lesser included offenses invites arbitrary decision making and, therefore, itself invites due process scrutiny.

In other places, the principal opinion suggests that lesser included offense instructions are required by statute. Yet the governing Missouri statute, section 556.046.2, RSMo 2000,[1] provides exactly the contrary, stating that a trial court is obligated to instruct down "*only* if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense" (emphasis added). *See also § 556.046.3, RSMo Supp. 2013*. The principal opinion is in conflict with these statutory standards.

In yet other places, the principal opinion suggests its result necessarily follows from this Court's prior recognition that a defendant need not put on affirmative evidence

---

[1] All statutory references are to RSMo 2000 unless otherwise noted.

to support a request for a lesser included offense instruction. In so stating, the principal opinion blatantly ignores the portions of the key case on which it and the companion case, *State v. Jackson*, rely – *State v. Williams*, which, while repeating the admonition that affirmative evidence is not required, also holds that an instruction down is required only when "a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established." *313 S.W.3d 656, 660 (Mo. banc 2010).*

In so holding, *Williams* reaffirmed the standard followed by numerous prior Missouri cases. That is also the standard followed by the United States Supreme Court and by 47 of our 49 fellow states. It is the standard this Court should continue to follow.

Indeed, not even the defense asked this Court to reject its long-standing rule and hold that lesser included offense instructions must be submitted even if a reasonable juror could not find them to be supported. The principal opinion created an issue where there was none. It then nullified a statute and overruled this Court's precedent without the benefit of argument or briefing. Principles of due process and separation of powers counsel against such activism.

Finally, assuming just for the moment that the principal opinion is correct that a defendant is entitled to a lesser included offense instruction even if a rational juror could not convict him of the lesser offense and acquit him of the greater, Mr. Pierce is not entitled to one here, for he *conceded* that the State had proved the only element differentiating the greater and lesser offenses by admitting in closing argument, in his motion for new trial and in the instruction conference that the substance seized weighed

3

more than two grams.  Yet the jury could acquit of the greater offense only if it found he did not possess more than two grams.  The principal opinion thereby holds that defense counsel cannot concede an issue.  The folly that this will cause in future cases and the arguments that heretofore would have been held waived but that henceforth must be considered on the merits cannot be overstated.

Because the principal opinion changes the law in contravention of Missouri statute and this Court's precedent and ignores the facts conceded by the defense, I dissent from the principal opinion's holding that the trial court erred in refusing to instruct the jury on the lesser included offense of possession.

## I.  MR. PIERCE WAIVED HIS OBJECTIONS TO RETRIAL UNDER ARTICLE I, SECTION 19

Article I, section 19 requires that, when a mistrial is declared because the jury cannot reach a verdict, the case must be set for retrial in the same or the following term.  That requirement was not followed here.  Mr. Pierce, therefore, moved the trial court to dismiss his case because of failure to comply with article I, section 19 at the start of his second trial in November 2011.  The principal opinion concludes that this was too late and that Mr. Pierce waived his claim under the retrial deadline in article I, section 19, because he failed to raise it at his earliest opportunity, stating, "Pierce had multiple opportunities to raise that deadline when the trial court was considering whether to continue his retrial prior to (and, ultimately, beyond) that date.  He chose not to do so." (Slip op. at 6).

4

This is incorrect. The key case that the principal opinion cites for this rule, *State v. Fassero*, concerns errors that the defendant attempted to raise for the first time on appeal. *256 S.W.3d 109, 117 (Mo. banc 2008)* (not analyzing when an article I, section 19 retrial deadline argument must be raised but merely applying the rule that "issues that are not raised in the trial court are waived").[2] Of course, Mr. Pierce did not raise this issue for the first time on appeal; he raised it in the trial court at the start of his second trial. So why does the principal opinion say he raised it too late to preserve it? Because it says he has an obligation to object when there is still time for the prosecution or court to correct the situation. But why? In what other circumstance do the courts require a defendant to tell the prosecution that it is about to let an important deadline pass that may be beneficial to the defendant? Does the defendant also waive the statute of limitations by not warning the court or prosecutor that it is about to expire? Must a defendant now inform the prosecutor that, if she empanels the jury, double jeopardy will attach or risk waiving her right to claim that double jeopardy attached? Must a defendant warn the prosecutor who asks for a mistrial that, if granted, will allow the defendant to claim double jeopardy?

Indeed, does the principal opinion's reasoning mean that defendant's failure to raise a double jeopardy claim also constitutes a "waiver" of defendant's right to later claim double jeopardy when a retrial is ordered? Of course it does not. To so hold would

---

[2] The other cited case, *Douglass v. Safire, 712 S.W.2d 373, 374 (Mo. banc 1986)*, states simply that a claim that a verdict is inconsistent must be brought before the jury is discharged. It is inapposite here, as the first jury long had been discharged and the second not empaneled when Mr. Pierce raised his article I, section 19 claim at the start of the second trial, when the error in his case first occurred.

5

turn double jeopardy law on its head. The law is well settled that a defendant is under no obligation to inform the court that if it dismisses suit, that defendant cannot be retried without violating double jeopardy principles. To the contrary, our cases explicitly hold that a defendant need not raise a double jeopardy objection until the state attempts to retry him or her, for only at that point is double jeopardy violated. In fact, as *State v. Tiger, 972 S.W.2d 385, 391 n.1 (Mo. App. 1998)*, explained, "We could not logically require [Defendant] to preserve [his double jeopardy claim] at his first trial, since no double jeopardy would yet have occurred. It only arose once the State decided to proceed against [Defendant] a second time." *Accord State ex rel. Reynolds v. Kendrick, 868 S.W.2d 134, 136 (Mo. App. 1993)*. In effect, the principal opinion's reasoning requires the defendant to become an advocate for the state, saving it from its own failure to recognize a double jeopardy situation. This the law does not require in the case of traditional double jeopardy, and neither should it so require here.

While not involving the classic form of double jeopardy, the retrial deadline is likewise contained within article I, section 19 of the Missouri Constitution, which actually is titled "Self-incrimination and double jeopardy." Like classic double jeopardy, the retrial deadline precludes retrial of a defendant if its requirements are not met. It is logical, therefore, that the principles governing application of a classic double jeopardy claim under article I, section 19 also govern application of article I, section 19's retrial deadline.

A defendant need not alert the state if it is about to take an action that would result in a violation of double jeopardy if the defendant later were to be retried. So too, Mr.

6

Pierce was not required to alert the court that, if it did not try him within the same or the next term after his first mistrial, it would violate his article I, section 19 rights. Of course, once that retrial commenced, he was obligated to raise his article I, section 19 retrial deadline objection, and he did just that. That was the proper time to do so, for before that time, none of his rights under article I, section 19 had been violated. Only the actual retrial could constitute such a violation.

This does not mean, however, that Mr. Pierce's article I, section 19 rights were violated. It means only that he did not waive them by failing to alert the court to the existence of the deadline for retrial set out in article I, section 19 before it had passed.

Double jeopardy principles do not always protect a defendant from retrial. It is axiomatic that a defendant who appeals a case and asks for a remand for new trial, for example, cannot claim the retrial violates his right to be free from double jeopardy. Similarly, a defendant who requests or causes a mistrial cannot complain that the resulting retrial violates double jeopardy. *State v. Tolliver, 839 S.W.2d 296, 299 (Mo. banc 1992)*. The rationale of *Tolliver* and similar cases is that no violation of double jeopardy protections occurs when it is the defendant who caused or consented to retrial. *Id.* Consent to mistrial is not a waiver of double jeopardy rights so much as it is the failure of double jeopardy protections to apply in the first instance, much like voluntary consent to a search would preclude a claim of a Fourth Amendment violation and voluntary agreement with a request not to print a fact would preclude later claiming a First Amendment violation.

7

And, just as one can consent to a retrial, and just as one can consent to a search that otherwise might violate the Fourth Amendment or to a restriction on speech that otherwise might violate the First Amendment, so too one can consent to a continuance of a trial to a date that otherwise might violate article I, section 19. Such consent is valid and precludes the defendant from later claiming that his retrial violates that constitutional provision. *Id.*

In the context of double jeopardy violations, consent to a mistrial may be express or implied. *Id.* In analyzing whether a defendant has consented and so vitiated any double jeopardy bar, this Court employs a case-specific factual analysis rather than a "mechanical formula." *Id.* "[C]onsent may always be implied from the totality of the circumstances attendant on the declaration of a mistrial." *Id.*

Mr. Pierce's first trial began on November 9, 2010, which fell within the November 2010 term. The next term began on February 14, 2011 and ended on May 6, 2011. His retrial originally was set within the same term as his first trial, on January 10, 2011. The first two continuances would have allowed the trial to occur within the next term, but the third through seventh continuances placed the retrial past May 6, 2011, the last day of the next term following his first trial.

Mr. Pierce objected to *none* of these continuances, despite being represented by counsel in each instance, and he requested two of them. He has not supplemented the record with any evidence that he ever moved to set a trial date, nor has he claimed that he had no opportunity to object. The totality of the circumstances shows that Mr. Pierce

impliedly consented to the delay in the start of his second trial and thereby vitiated any claim that article I, section 19 barred his retrial after the end of the next term of court.

Accordingly, I concur that article I, section 19 does not bar Mr. Pierce's retrial, but I would hold that this is because he consented to the delays, not because he waived his right by not alerting the court or prosecutor to the article I, section 19 issue before the deadline for retrial passed.

## II. THE TRIAL COURT DID NOT ERR IN REFUSING TO SUBMIT AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF POSSESSION

### A. The Trial Court's Authority to Instruct the Jury

The principal opinion's holding that a court always must instruct down if requested subverts the trial court's exclusive authority to declare the law and requires this Court to overrule more than 15 years of its own precedent and to nullify the effect of two validly enacted statutes.

The principal opinion says this result is required by the rule that the jury has a right to believe or disbelieve all or any part of the evidence. Certainly, our cases so provide. *See, e.g., Williams, 313 S.W.3d at 660.*

But the principal opinion then goes on to reach a conclusion never before reached in any other Missouri case – that the "unavoidable corollary" of this rule is that any requested lesser included offense instruction must be submitted to the jury, even if no reasonable juror could find the fact on which it is premised, because "[a]ll decisions as to what evidence the jury must believe and what inferences the jury must draw are left to the

9

jury."  In effect, the principal opinion concludes that the jury's ability to believe and disbelieve evidence somehow restricts the trial court's discretion to instruct the jury.

This logic confuses questions of law with questions of fact.  It undercuts the fundamental structure of our court system, in which the court's function is to declare the law and the jury's function is to apply the law.  *United States v. Gaudin, 515 U.S. 506, 513 (1995); Sparf v. United States, 156 U.S. 51, 102 (1895).*  The jury's right to find facts cannot shape the trial court's declaration of law.

As the United States Supreme Court notes in *Sparf*, "It is true, the jury may disregard the instructions of the court, and in some cases there may be no remedy.  *But it is still the right of the court to instruct the jury on the law, and the duty of the jury to obey the instructions.*"  *156 U.S. at 72* (emphasis added).  In other words, the jury's function and the court's function are different; that the jury has the power to disregard the law does not deprive the court of its fundamental authority to declare and instruct on the law.

But by mandating that courts instruct the jury on a lesser included offense whenever a party so requests, the principal opinion effectively strips courts of their authority to declare the law in these circumstances.  This is wrong, for "the judge always has the right and duty to tell [the jury] what the law is upon this or that state of facts." *Horning v. District of Columbia, 254 U.S. 135, 138 (1920), abrogated on other grounds as recognized by Gaudin, 515 U.S. at 520.*

Exercising this authority, the Supreme Court holds that an "independent prerequisite for a lesser included offense instruction [is] that the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit

10

him of the greater." *Schmuck v. United States, 489 U.S. 705, 720 n.8 (1989); see also Keeble v. United States, 412 U.S. 205, 208 (1973)* ("[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater").

As *Sparf* states, "If the jury were to be made judges of the law as well as of fact, parties would be always liable to suffer from an arbitrary decision." *156 U.S. at 96.* Consequently, "The lesser-included offense charge is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all." *United States v. Tsanas, 572 F.2d 340, 343 (2d Cir. 1978).*[3]

For this reason, the Supreme Court expressly has disapproved of state laws that require a trial court to instruct down when there "is not a scintilla of evidence to support the lesser verdicts." *Roberts v. Louisiana, 428 U.S. 325, 334 (1976)* (plurality opinion). The Supreme Court also admonishes that "[a] lesser included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual

---

[3] On this issue, the principal opinion cites language from the United States Supreme Court espousing the rule that a trial court is prohibited from directing a verdict against a defendant in a criminal case. We note also that in *State v. Jackson, --- S.W.3d --- (Mo. banc 2014)*, a companion case, the principal opinion states, without a supporting citation, that a trial court's refusal to instruct down where a party has so requested amounts to impermissibly directing a verdict against the defendant.

The United States Supreme Court rejected this argument in *Sparf, 156 U.S. at 102-03, 105-07. Sparf* recognized a trial court's authority to decide as a matter of law whether to instruct down and held that the trial court did not err in refusing a request to instruct down. Relying on *Sparf*, at least two other states have directly rejected the argument that a court's refusal to instruct down constitutes a directed verdict, *People v. Prince, 40 Cal. 4th 1179, 1269-70 (Cal. 2007); Hartley v. State, 653 P.2d 1052, 1055 (Alaska App. 1982).*

element which is not required for a conviction of the lesser-included offense." *Sansone v. United States, 380 U.S. 343, 349-50 (1965)*.

Not surprisingly, in light of this wealth of Supreme Court cases, every state except Iowa and Florida requires a basis in the evidence for a court to be obligated to instruct down. *See, e.g. Ex parte Smith, 756 So.2d 957, 963 (Ala. 2000)* ("A defendant is entitled to a charge on a lesser-included offense only if there is any reasonable theory from the evidence to support the charge").[4]

Nonetheless, in the face of nearly unanimous precedent among the federal and state courts, the principal opinion implicitly holds that a trial court's authority to refuse to instruct down violates the defendant's right to have his guilt determined by a jury.[5] In

---

[4]*Accord State v. Wall, 126 P.3d 148, 151 (Ariz. 2006); Atkinson v. State, 64 S.W.3d 259, 268 (Ark. 2002); People v. Hughes, 27 Cal.4th 287, 366 (Cal. 2002); State v. Tomlin, 835 A.2d 12, 27 (Conn. 2003); State v. Hupp, 809 P.2d 1207, 1212 (Kan. 1991); Perry v. Commonwealth, 839 S.W.2d 268, 273 (Ky. 1992); Commonwealth v. Porro, 939 N.E.2d 1157, 1167 (Mass. 2010); People v. Cornell, 646 N.W.2d 127, 130 (Mich. 2002); State v. Dahlin, 695 N.W.2d 588, 595-97 (Minn. 2006); State v. Brent, 644 A.2d 593, 118 (N.J. 1994); People v. Van Norstrand, 647 N.E.2d 1275, 1278 (N.Y. 1995); State v. Tamburano, 271 N.W.2d 472, 475 (Neb. 1978); Rosas v. State, 147 P.3d 1101, 1106-07 (Nev. 2006), abrogated on other grounds by Willing v. State, 2013 WL 3297070, at \*2 (Nev. May 14, 2013); State v. Keller, 695 N.W.2d 703, 711 (N.D. 2005); State v. Wilkins, 415 N.E.2d 303, 308 (Ohio 1980); State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999); Bignall v. State, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994); State v. Fernandez-Medina, 6 P.3d 1150, 1154 (Wash. 2000); State v. Sarabia, 348 N.W.2d 527, 531 (Wis. 1984). Contra State v. Jeffries, 430 N.W.2d 728, 737 (Iowa 1988); State v. Wimberly, 498 So.2d 929, 932 (Fla. 1986).*
These cases and their holdings are discussed in more detail in the separate opinion of Stith, J., in *State v. Jackson, --- S.W.3d --- (Mo. banc 2014)*, also handed down this day.
[5] An analogy to cases discussing a court's review of the sufficiency of the evidence may prove helpful. A sufficiency of the evidence analysis requires a court to determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia, 443 U.S. 307, 318 (1979)*. In *Jackson*, the

support, it cites only to Missouri statutes and to prior Missouri cases. As shown below, neither supports its reasoning.

**B.** ***Missouri Statutes Require Trial Courts to Instruct Down Only When There Is a Basis in the Evidence to Do So***

Section 556.046.2 provides in relevant part:

> The court *shall not be obligated to charge the jury* with respect to an included offense *unless there is a basis* for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

*§ 556.046.2* (emphasis added). The legislature amended section 556.046 in 2001 to include subsection (3), which states:

> The court shall be obligated to instruct the jury with respect to a particular included offense *only if there is a basis in the evidence* for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense.

*§ 556.046.3, RSMo Supp. 2013* (emphasis added).

The principal opinion guts the express language of sections 556.046.2 and 556.046.3 confining a trial court's obligation to instruct down to situations in which there is "a basis" for doing so when it holds that "there is always a basis in the evidence …

---

Supreme Court holds that in determining the sufficiency of the evidence, "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Id. at 319* (emphasis added). The "rational trier of fact" standard, *Jackson* explains, is permissible because it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." That is, a court's authority when reviewing the sufficiency of the evidence to determine what fact a jury can and cannot find based on the reasonable juror standard does not impermissibly infringe on the jury's ability to believe or disbelieve any or all of the evidence.

because the jury is free to disbelieve all or any part of the evidence." This reasoning renders the requirement that there be a basis in the evidence mere surplusage, thereby nullifying it and overruling an entire line of case law giving meaning to this statutory requirement. Moreover, in writing this express requirement out of existence, the principal opinion transgresses well-established rules of statutory construction and separation of powers, which require that courts avoid interpreting statutes in a way that renders their language meaningless or unreasonable. *See Am. Fed'n of Teachers v. Ledbetter, 387 S.W.3d 360, 363 (Mo. banc 2012).* This is just what the principal opinion has done in interpreting the statutory requirement as always being satisfied when the statute expressly states that it is only satisfied under certain conditions.

This Court repeatedly has identified the proper approach to construing a statute. "In determining legislative intent, this Court [should consider] the language of the statute and words employed in their plain and ordinary meaning." *Finnegan v. Old Republic Title Co. of St. Louis, Inc., 246 S.W.3d 928, 930 (Mo. banc 2008); accord Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. banc 2011), quoting Parktown Imports, Inc. v. Audi of America, Inc., 278 S.W.3d 670, 672 (Mo. banc 2009).* "Where the language is clear and unambiguous, there is no room for construction." *Hyde Park Hous. Partnership v. Dir. of Revenue, 850 S.W.2d 82, 84 (Mo. banc 1993).* "It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect." *Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 673 (Mo. banc 2010)* (Breckenridge, J., concurring).

Applying these principles here, there is no room for statutory construction. The plain meaning of sections 556.046.2 and 556.046.3 is indisputable: a trial court is required to instruct down only when there is a *basis in the evidence* for so doing.

The practical consequences of the principal opinion's new rule highlight its incompatibility with the plain meaning of section 556.046. Take, for example, a situation in which the defendant is charged with armed robbery, and the evidence, including a surveillance video, indisputably shows that the robber carried a large firearm when he committed the robbery. The defendant denies that he was the person who committed the robbery but does not contest that the robber used a firearm. He requests a lesser included instruction on unarmed robbery.

As this Court's traditional interpretation of section 556.046.2 entitles a party to a lesser included offense instruction only if there is a basis for a verdict (1) acquitting the defendant of the charged offense and (2) convicting him of the lesser offense, the trial court would not be required to instruct down because there is no basis to convict the defendant of unarmed robbery. That is because there is no dispute that an armed robbery occurred, the only dispute is whether the defendant was the robber. Consequently, there may be a basis to acquit the defendant of the greater offense, but, if so, there can be no basis to convict him of the lesser offense: he either is guilty of armed robbery or innocent of any crime. Indeed, this Court and the court of appeals have reached this same conclusion under parallel circumstances. *See, e.g., State v. Amerson, 518 S.W.2d 29, 33 (Mo. 1975)* (holding the trial court properly refused to instruct on second-degree murder when the crime was either "a cold-blooded and wholly unprovoked murder" or "the

15

accused was guilty of no crime at all" because another committed the act).[6]  This is the result that a plain meaning interpretation of sections 556.046.2 and 556.046.3 requires.

Yet under the principal opinion's holding, a trial court nonetheless would be required to instruct the jury on unarmed robbery.  The principal opinion explains that this is because evidence necessary to support the differential element of a greater charge is "wholly irrelevant" to a jury's ability to convict the defendant of the lesser charge and, because the State has the burden of proof, the jury always can acquit him of the greater charge, even when there is "undisputable" evidence that the person who committed the offense, whether or not it was defendant, committed the greater crime.

This is precisely the arbitrary decision-making the United States Supreme Court sought to avoid when it approved a trial court's refusal to instruct down in *Sparf, 156 U.S. at 63-64, 102-03*.  As explained by Professor Wayne LaFave, for the trial court to give such a charge under those circumstances "is inappropriately to invite the jury to exercise a degree of mercy by finding defendant guilty of a lesser crime, when the proof truly justified conviction as charged."  *6 Wayne LaFave, Criminal Procedure § 24.8(f), 503 (3d ed. 2007)*.  Similarly, the Supreme Court long has held that "it is clearly error in a court to charge the jury upon a supposed or conjectural state of facts, of which no evidence has been offered."  *United States v. Breitling, 61 U.S. 252, 254 (1857); Quercia v. United States, 289 U.S. 466, 470 (1933)* (additional citation omitted).  Indeed, "due process requires that a lesser included offense instruction be given *only* when the

---

[6] This Court reached the same conclusion on similar circumstances in *State v. Mease, 842 S.W.2d 98, 112 (Mo. banc 1992)*.  *See also State v. Lowe, 318 S.W.3d 812, 822 (Mo. App. 2010)*.

16

evidence warrants such an instruction." *Hopper v. Evans, 456 U.S. 605, 611 (1982)* (emphasis original).

The jury's province in determining guilt is not at issue here; this case involves the court's authority to instruct, and the legislature explicitly delineated this authority when it promulgated section 556.046.2 and, later, section 556.046.3, which confine the requirement for a trial court to instruct down to certain circumstances. That the jury has free range to find the facts does not deprive a court of its authority—and obligation—to apply the law.

## C.    Prior Missouri Cases Require a Basis in the Evidence to Instruct Down

The principal opinion finally justifies its result by stating it is required by prior case law. In support, it refers the reader to detailed discussion of those cases in the companion case, *State v. Jackson, --- S.W.3d --- (Mo. banc 2014).* Of course, if those prior cases erroneously interpreted section 556.046 to require instructing down regardless of the evidence, they would be incorrect for the reasons just set out. But these cases do not so require.

*Williams*, the primary authority relied on by *Jackson*, is the latest in the line of this Court's lesser included offense instruction cases. It, like its predecessors, does *not* state that a lesser included offense instruction must be given whenever requested, as the majority now holds for the first time. Rather, *Williams* reaffirms that a party's entitlement to a lesser included offense instruction under 556.046 is determined by whether "*a reasonable juror* could draw inferences from the evidence presented that an

17

essential element of the greater offense has not been established." *313 S.W.3d at 660* (emphasis added).

Myriad prior cases decided by this Court and the court of appeals similarly have recognized that the issue is what "a reasonable juror" can infer from the evidence, not what unreasonable inferences might be possible if the jury chose not to act rationally. Among these cases are *State v. Pond, 131 S.W.3d 792, 794 (Mo. banc 2004)* (holding that the defendant was entitled to a lesser included offense when discrepancies in the victim's statements to witnesses and her testimony at trial could have led a "reasonable jury [to] find the prior statements more believable"), *State v. Derenzy, 89 S.W.3d 472, 474 (Mo. banc 2002)* ("If a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established, the trial court should instruct down"), *State v. Beeler, 12 S.W.3d 294, 300 (Mo. banc 2000)* ("[W]here the facts are such that no rational factfinder could conclude the defendant acted without deliberation, no second degree murder instruction is required"), *State v. Hineman, 14 S.W.3d 924, 927 (Mo. banc 1999)* (same), *State v. Hibler, 5 S.W.3d 147, 148 (Mo. banc 1999)* ("A reasonable jury could have believed that appellant did not attempt to kill the victim …. Therefore, there was a basis for acquitting appellant of first degree assault …."), *State v. Yacub, 976 S.W.2d 452, 453 (Mo. banc 1998)* (applying rational juror standard), *State v. Santillan, 948 S.W.2d 574, 576 (Mo. banc 1997)* ("If a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established, the trial court should instruct down"), and *Mease, 842 S.W.2d at 112* (approving the trial court's refusal to instruct down in first-

18

degree murder case when "the only reasonable conclusion" was that the defendant deliberately murdered the victim).

In other words, each of these cases holds that an evidentiary basis for acquittal of the charged offense and conviction of the lesser offense is a predicate requirement to instructing down. And the reasonable juror standard defines whether that basis is sufficiently established. To remove the reasonable juror standard from the analysis of whether a court properly refused to instruct down requires overruling *Williams* and each of these cases, which invokes *stare decisis*.

As this Court repeatedly has emphasized, "a decision of this Court should not be lightly overruled." *Eighty Hundred Clayton Corp. v. Dir. of Revenue, 111 S.W.3d 409, 411 n.3 (Mo. banc 2003)*. *Stare decisis* "promotes stability in the law by encouraging courts to adhere to precedents." *State v. Honeycutt, 421 S.W.3d 410, 422 (Mo. banc 2013), quoting Med. Shoppe Int'l, Inc. v. Dir. of Revenue, 156 S.W.3d 333, 334-35 (Mo. banc 2005)*. Moreover, "*stare decisis* is most essential regarding prior statutory interpretations because it is there that the rule of law and respect for the separation of powers meet." *Templemire v. W & M Welding, Inc., --- S.W.3d --- (Mo. banc 2014)* (Fischer, J., dissenting).

When, as in *Templemire*, the prior interpretation of the statute was inconsistent with the plain meaning of the statute, the rules of construction required this Court to overrule its prior precedent, which improperly added words to the statute by judicial fiat rather than by legislative enactment. But here, the principal opinion's departure from this

Court's previous interpretation of sections 556.046.2 and 556.046.3 without any directly supportive authority is precisely the type of action *stare decisis* is designed to restrain.

In sum, *Williams*, *Pond*, other cases, the Missouri statute, and constitutional principles of due process require a basis in the evidence from which a reasonable juror could acquit the defendant of the greater offense and convict him of the lesser. For these reasons and those stated in my dissenting opinion in *State v. Jackson*, I would hold that a juror's right to disbelieve all or any of the evidence does not justify submitting a question to the jury that no reasonable juror could conclude was supported by the evidence.

### D. Mr. Pierce Was Not Entitled to an Instruction on the Lesser Included Offense of Possession

Applying these principles here, the question is whether a reasonable juror could find that the State had failed to prove that Mr. Pierce possessed more than two grams of a substance containing cocaine but had proved that Mr. Pierce did possess some amount of such substance. If so, then it could acquit him of trafficking but convict him of the lesser included offense of possession.

Had there been no concession by counsel, so that the only issue was whether the evidence supported a lesser included offense instruction, I would hold that the trial court was obligated to instruct the jury on possession because the evidence permitted a reasonable juror to conclude that Mr. Pierce did possess a substance containing cocaine, but not more than two grams of it. That was not the situation, however, as Mr. Pierce did not dispute that the State had proved that the substance weighed more than two grams. In fact, Mr. Pierce's attorney admitted to the jury in closing argument and conceded at the

20

instruction conference and in his motion for new trial that the substance weighed more than two grams at the time it was seized. In the instruction conference, defense counsel argued that the jury might find that the weight was two grams or less only if it discounted the weight of the water: "[I]n light of the testimony of [sic] concerning moisture or water loss which is included in the weight of those – the weights indicated, I believe that there is a basis for possession." The trial court rejected this as a basis for instructing down. Nonetheless, in closing argument, counsel again made this concession in asking the jury to find his client not guilty, stating,

> And I guess I want to wrap up with this idea of this evidence. Do we even know that it is 2.5 grams? Oh, I suspect it weighed this weight, around 2.5 grams, on the date of his arrest. I have a reason to believe that. But is all of this that was weighed that day, was that actually all a controlled substance?

He repeated this argument in his motion for new trial, admitting that substance weighed 2.51 grams at the time of the arrest and stating that the "state lab witnesses testified credibly that the vast majority of the weight loss of the controlled substance – crack – was water." The trial court properly rejected this argument then, as it had at the instruction conference, for it was based on an erroneous understanding of the law.

His argument was not that the substance weighed two grams or less but that water caused the substance to weigh more than two grams. That is legally irrelevant. The trafficking instruction did not permit a jury to exclude consideration of the moisture content of the substance seized. It was based on MAI-CR 325.14, which in turn was based on the trafficking statute, section 195.223. The latter provides: "A person commits the crime of trafficking drugs in the second degree if … he possesses or has under his

21

control … more than two grams of a mixture or substance described in subsection 2 of this section which contains cocaine base." It does not matter if part of the weight is moisture so long as there is a detectable amount of cocaine base in the substance.[7]

As the defense did not dispute at trial the credibility or reliability of the evidence that at the time of his arrest defendant possessed more than two grams of a substance containing cocaine base, no reasonable jury could conclude based on the evidence that Mr. Pierce did not possess more than two grams of cocaine. Indeed, such uncontested facts need not even be submitted. *See, e.g., State v. Hook, 433 S.W.2d 41, 48 (Mo. App. 1968)* ("[W]here there is no conflict in the evidence, the question becomes one of law for the court and not one of fact for the jury.")*; cf. White v. Dir. of Revenue, 321 S.W.3d 298, 308 (Mo. banc 2010)* (stating that appellate court can review uncontested facts without deference to findings below in review of license revocation). The trial court's refusal to instruct the jury on possession, therefore, was not error.

For these reasons, I would hold the trial court properly refused to instruct down.

---

[7] As the United States Supreme Court held in *Chapman v. United States, 500 U.S. 453 (1991)*, a case involving possession of LSD on blotter paper, it was not a violation of due process or otherwise improper to consider the weight of both the LSD and the blotter paper because "[s]o long as [the mixture or substance] contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence." *Id. at 459*. Missouri courts apply the same rule. They repeatedly have held that under Missouri statute other substances mixed with the controlled substance are considered in determining the weight of controlled substance possessed by a person. Applying this rule in *State v. Hill, 827 S.W.2d 196, 198 (Mo. banc 1992)*, this Court upheld the first degree trafficking conviction of a defendant who possessed over 500 milligrams of a "mixture or substance" containing LSD where much of the weight was due to the blotter paper that contained the LSD.[7] Mr. Pierce wanted a lesser included offense instruction based on jury nullification of this element, not because he believed the jury might disbelieve all or part of the State's evidence as to weight.

22

## III.    CONCLUSION

I concur with the principal opinion's conclusion that Mr. Pierce's retrial did not violate double jeopardy, although not with its rationale, and I concur in full with the principal opinion's holding that the evidence was sufficient to support his resisting arrest conviction.

I disagree that the trial court erred in refusing to submit the lesser included offense instruction on possession, however, and would affirm.

_____
**LAURA DENVIR STITH, JUDGE**

23



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,          )
                                 )
        Respondent,        )
                                 )
vs.                          )        No. SC93321
                                 )
BRUCE PIERCE,          )
                                 )
        Appellant.         )

## DISSENTING OPINION

I respectfully dissent from the principal opinion in that I believe the trial court did not err in refusing to give the instruction for the lesser included offense of possession of a controlled substance. All of the evidence at trial demonstrated that the amount of cocaine base in Bruce Pierce's (hereinafter, "Pierce") possession was more than two grams, thussupporting an instruction for second-degree trafficking, a class B felony. There was no evidence supporting the instruction for possession of a controlled substance. Accordingly, I would affirm the trial court's judgment.

A trial court is "obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense." Section 556.046.3, RSMo Supp.

2002.[1]  Reversal is mandated only when the failure to offer the instruction was prejudicial to the defendant.  *State v. Derenzy*, 89 S.W.3d 472, 475 (Mo. banc 2002).

The principal opinion here,and in the companion case,*State v. Jackson*, __ S.W.3d __ (Mo. banc 2014) (No. SC93108, decided June 24, 2014), asserts that from this point henceforth, the trial court no longer will determine whether there is sufficient evidence presented from which a lesser included instruction may be given, and the trial court must always instruct on any lesser included instruction.  By mandating that a trial court must give a lesser included instruction for the sole reason that the jury may disbelieve part of the State's evidence, this Court has eviscerated the language of section 556.046.3.  Under the rationale advanced by the principal opinion, the jury need not have a basis *in the evidence* upon which to base its verdict.

In the underlying case, the evidence consistently and unequivocally demonstrated that Pierce possessed more than two grams of cocaine base. The principal opinion states the jury could have disbelieved the State's evidence and found that the cocaine was less than two grams.  However, the principal opinion disregards the evidence presented at trial, allowing the jury to infer that the drug base was less than two grams.  The principal opinion grants the jury a roving commission from which to determine the degree of a defendant's guilt.

Our courts are instructed statutorily as to when providing a lesser included instruction is appropriate.  Section 556.046.3 provides, "The court shall be obligated to instruct the jury with respect to a particular included offense *only if there is a basis in the*

---

[1] All statutory references are to RSMo Supp. 2002, unless otherwise indicated.

*evidence* for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense." (Emphasis added). The primary rule of statutory construction is to ascertain the intent of the legislature from the plain language used in the statute. *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010). "When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment." *Id.*

The principal opinion relies upon *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), *State v. Williams*, 313 S.W.3d 656 (Mo. banc 2010), and *State v. Hineman,* 14 S.W.3d 924, 927 (Mo. banc 1999) to support the proposition that the jury "is entitled to believe or disbelieve all or any part of the evidence before it." However, each of these cases is distinguishable factually.

In *Celis-Garcia*, Maura Celis-Garcia ("Mother") was found guilty of two counts of first-degree statutory sodomy against her children.[2] Mother asserted her constitutional right to a unanimous jury verdict was violated because the verdict directors failed to require the jury to agree on specific acts to find her guilty of a single count of statutory sodomy against each child. *Celis-Garcia,* 344 S.W.3d at 152.

At trial, both of the mother's children testified, through videotaped depositions, as to the various acts of sodomy committed against them. *Id.* at 153. The State also presented the testimony of a forensic interviewer and a licensed social worker, both of whom interviewed the children and testified the children told them of an occasion

---

[2] This case does not address the applicability of a lesser included instruction. Rather, its analysis addressed whether the jury instructions required a unanimous jury verdict. *Id.* at 154-59.

3

whenthere was abuse occurring in the bathroom, but it was interrupted by the grandmother. *Id.* The grandmother also testified, denying she witnessed any inappropriate touching of the children. *Id.* The grandmother "testified that the children had a reputation for lying." *Id.*

In holding Mother's convictions for first-degree statutory sodomy should be reversed, this Court noted the fact that Mother "relied on evidentiary inconsistencies and factual improbabilities respecting each specific allegation of hand-to-genital contact makes it more likely that individual jurors convicted her on the basis of different acts." *Id.* at 159. The Court also remarked that the jury was free to believe or disbelieve any of the conflicting witness testimony. *Id.* The Court then determined the submitted verdict directors misdirected the jury and her right to a unanimous jury verdict was violated. *Id.* at 160.

In *Williams*, the defendant was charged with second-degree robbery by acting with another. *Williams,* 313 S.W.3d at 657. The defendant testified in his own defense at trial, denying the charge against him. *Id.* The defendant requested, and the trial court denied, the lesser included instruction of felony stealing. *Id.*

This Court in *Williams* properly determined that a "defendant is entitled to an instruction on any theory the evidence establishes." *Id.* at 659 (quoting *State v. Pond*, 131 S.W.3d 792, 794 (Mo. banc 2004)). Additionally, this Court reiterated the fact that a jury may believe or disbelieve any of the evidence presented at trial. *Id.* at 660. The evidence presented at trial in *Williams* provided a basis for the jury to acquit the defendant "of robbery in the second degree and convict him of felony stealing." *Id.* The jury could

4

have believed the defendant's testimony and disbelieved another witness' testimony. *Id.* The defendant was entitled to the lesser included instruction because there was a basis in the evidence for the instruction. *Id.*

Finally, in *Hineman,* Charles Hineman ("Father") was convicted of one count of first-degree assault, section 565.050, RSMo 1994, and one count of child abuse, section 568.060, RSMo 1994. *Hineman*, 14 S.W.3d at 927. Father claimed the trial court erred in failing to submit his proposed instruction for the lesser included offense of second-degree assault.

At trial, there was testimony that the type of injury the child received typically indicated child abuse. *Id.* at 926. Additionally, there were various explanations introduced into evidence as to how the child was injured and "expert testimony that injuries such as the injury in this case can be accidental." *Id.* at 927. Testimony also supported several theories about Father's mental state at the time of the injury. *Id.* at 926-27.

The difference between the two assault charges was Father's mental state. *Id.* The evidence presented could support either a mental state of acting knowingly or acting recklessly. *Id.* This Court stated that it was within the jury's province to make that inference based upon the evidence it heard at trial. *Id.* Accordingly, this Court stated, "If there is any doubt concerning the evidence, the trial court should resolve any doubts in favor of instructing on a lower degree of the crime, leaving it to the jury to decide which of two or more grades of an offense, if any, the defendant is guilty." *Id.* Father was

entitled to the lesser included instruction because there was evidence from which the jury could determine Father's mental state.

While the principal opinion cites *Celis-Garcia, Williams,* and *Hineman* for the proposition that the jury is free to believe or disbelieve any evidence, there was a basis in the evidence in each of those cases from which the jury could make a determination. In contrast, there was no basis in the evidence in this case as required by section 556.046.3 to mandate the giving of the lesser included instruction. There was nothing in the record indicating Pierce possessed anything less than two grams of cocaine base. There was no *evidence* whatsoever to support the lesser included instruction. Should a jury simply not believe the *evidence* presented at trial, the jury does not need to convict a defendant because the State failed to make its case.

The legislature clearly stated that a lesser included offense may be given only when there is a basis in the evidence. Section 556.046.3. Disbelieving all consistent evidence presented at trial is not the same as having a basis in the evidence to support an instruction. The principal opinion's conclusion to the contrary has ignored the plain language of the statute.

By mandating that a lesser included instruction is required in every case for the sole rationale that the jury may disbelieve the evidence presented, this Court opens floodgates of needless litigation and error.[3] This decision potentially will increase

---

[3] Given the principal opinion's decision that it is prejudicial error for a lesser included instruction not to be given on the sole basis that the jury could disbelieve the evidence, this Court should rule on the retroactivity of this proposition and its *habeas* application before issuing any additional show cause orders to set execution dates for defendants

6

convictions wherein the jury decides that the defendant did not commit the crime for which he or she was charged, but did something, thereby, convicting the defendant on the lesser included offense that was mandated by this Court.

Accordingly, I believe the trial court did not err in refusing to submit an instruction for a lesser included offense when there was no evidence to support it. I would affirm the trial court's judgment.

_____
GEORGE W. DRAPER III, JUDGE

---

awaiting imposition of the death penalty. *See, e.g., State v. Barnett*, 980 S.W.2d 297, 305-06 (Mo. banc 1998) (upholding a death sentence after the trial court failed to instruct on the lesser included offenses) and *State v. Johnson*, 284 S.W.3d 561, 575-76 (Mo. banc 2009) (upholding a death sentence and finding no error for failure to instruct on the lesser include offenses requested by the defendant).